COMMONWEALTH *vs.* DENISE ANN VIOLET REED
(and a companion case[1]).

Middlesex.    December 4, 1974. — January 31, 1974.

Present:    TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Escape. Imprisonment. Penal Institution. Practice, Criminal,* Appeal,
Sentence. *Words,* "Final judgment."

An appeal lay from a finding of guilty of a crime and the placing of the
defendant on probation by a judge of the Superior Court without the
imposition of a sentence. [546-547]

A prisoner in the Massachusetts Correctional Institution at Framingham
who was transferred for thirty days' observation to the Westboro State
Hospital and prior to the expiration of such period left the hospital
without authorization was "considered" by G.L.c. 127, § 119, as ap-
pearing in St. 1967, c. 258, § 2, "as in the custody of the officer having
charge of the . . . house of correction during her absence," and was
guilty of escaping therefrom under G.L.c. 268, § 16A, as amended
through St. 1955, c. 770, § 83. [547-548] HENNESSEY, J., dissenting.

TWO INDICTMENTS found and returned in the Superior
Court on October 5, 1972.

The cases were heard by *Lappin,* J.

*John F. Palmer* for the defendants.

*Terence M. Troyer,* Assistant District Attorney, for the
Commonwealth.

TAURO, C.J.  Both defendants were tried and convicted
under indictments pursuant to G. L. c. 268, § 16A, as
amended through St. 1955, c. 770, § 83,[2] charging escape.
The indictments stated that each defendant "being a prisoner

---

[1]Commonwealth *vs.* Ann F. Carrigan.

[2]On November 20, 1973, the Legislature repealed § 16A and incorporated its pro-
visions into a broader version of § 16, St. 1973, c. 1062. This change does not affect
the defendants who were convicted prior to the change.

in the Massachusetts Correctional Institution at Framingham . . . did break therefrom and escape." The cases are here on bills of exceptions to the denial of the defendants' motions for directed verdicts. The statute imposes imprisonment for a term not exceeding two years on any prisoner "who escapes or attempts to escape from the Massachusetts Correctional Institution, Framingham, or from land appurtenant thereto, or from the custody of any officer thereof, or while being conveyed to or from said correctional institution . . .." The defendants contend that the statute is inapplicable to them. We state the pertinent evidence. Both were confined at the women's reformatory, Massachusetts Correctional Institution, Framingham. When a question arose as to whether they were suffering from mental illness, they were examined by a psychiatrist, and were ultimately transferred for thirty days' observation to the Westboro State Hospital. Prior to the expiration of the thirty day period, they left the hospital without authorization, returning voluntarily after a period of absence. They contend that they left Westboro State Hospital, and not the Massachusetts Correctional Institution, Framingham, and thus G. L. c. 268, § 16A, did not apply to them. The Commonwealth, on the other hand, relies on G. L. c. 127, § 119, as appearing in St. 1967, c. 258, § 2, which reads, "Any prisoner placed in a hospital or medical facility . . . shall, during his absence from prison or the jail or house of correction, be considered as in the custody of the officer having charge of the prison, jail or house of correction, and the time of confinement in said hospital or medical facility shall be considered as part of the term of sentence." On the basis of this section, the Commonwealth asserts that in leaving Westboro State Hospital, the defendants escaped from "the custody of . . .[an] officer" of the Massachusetts Correctional Institution, Framingham, and thus committed the crime of escape under G. L. c. 268, § 16A. We agree.

Before further discussion of the issue, we first pause to dispose of a threshold argument advanced by the Commonwealth. The defendants, after being found guilty by the

judge sitting without a jury, received no sentences but were instead placed on probation for one year. This disposition differs in form, but not in substance, from the initial imposition of a sentence which is at the same time suspended with an order for probation. The Commonwealth contends this formal distinction is important in light of the rule that an appeal to this court lies only where there has been final judgment. In this case, it is argued, there was no final judgment because " 'in a criminal case the sentence is the judgment.' *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 19 [1923].'' The *Dascalakis* case, however, concerned only the question of the prosecutor's power, after conviction but before sentencing, to enter a nolle prosequi. Thus, while what was said in the *Dascalakis* case may have relevance in that context, it does not bear directly on the essential question of a defendant's right of appeal to this court. More in point are our earlier holdings that a suspended sentence under G. L. c. 279, § 1, represents a final judgment from which a claim of appeal may be filed. *Mariano* v. *District Court of Cent. Berkshire,* 243 Mass. 90 (1922). *Forcier* v. *Hopkins,* 329 Mass. 668 (1953). We believe that a defendant who has received no sentence but instead has been placed on probation should have a right of appeal. In the circumstances of this case we think there is no substantial difference between placing the defendants on probation, without more, as opposed to the imposition of suspended sentences with probation. We hold, therefore, that the defendants have a right to appeal in this case. *Delaney* v. *State,* 190 So. 2d 578 (Fla. 1966). See *People* v. *Sims,* 32 Ill. 2d 591 (1965); *State* v. *Longmore,* 178 Neb. 509 (1965).

We now turn to the question of the applicability of G. L. c. 268, § 16A, to the defendants' conduct. As in *Commonwealth* v. *Hughes, ante,* 426, we decline to follow a strictly literal approach. Rather, it is our view that, in interpreting escape statutes, there is justification for adopting a construction which permits the punishment of all escaping prisoners. It is self-evident that G. L. c. 268, § 16A, does not contain any explicit provision which makes it a crime to

Commonwealth *v.* Reed.

escape from Westboro State Hospital. But that section cannot be read in isolation, apart from the language of G. L. c. 127, § 119, which defines the custodial relationship between a prisoner and the correctional institution from which he is temporarily transferred. General Laws c. 127, § 119, pointedly states that "Any prisoner placed in a hospital . . . shall, during his absence from prison or the jail or house of correction, *be considered as in the custody of the officer having charge of the prison, jail or house of correction,* and the time of confinement in said hospital . . . shall be considered as part of the term of sentence" (emphasis added). It would seem illogical to construe a legislative intent that although the prisoner was to get credit in the execution of his sentence for the term spent in the hospital, however, if he escaped from the hospital he was not considered to be in custody for the purpose of being punished. Legally, a prisoner transferred from the Massachusetts Correctional Institution, Framingham, to Westboro State Hospital remains in the "custody of the officer having charge" of the Massachusetts Correctional Institution, Framingham. General Laws c. 268, § 16A, explicitly makes it a crime to "escape . . . from the custody of any officer [of Framingham]." Reading these two statutes in conjunction, keeping in mind (1) G. L. c. 268, § 16A's, over-all purpose of deterring and punishing all escaping prisoners, and (2) the significant similarity of the language employed in both provisions, we conclude that the defendants, in leaving the Westboro State Hospital without authorization, committed the crime of escape as defined in G. L. c. 268, § 16A. See *Commonwealth* v. *Hughes, ante,* 426. Cf. *People* v. *Priegel,* 126 Cal. App. 2d 587 (1954); *Slagle* v. *State,* 243 Md. 435 (1966); but cf. *Goodman* v. *State,* 96 Ariz. 139 (1964); *State* v. *Burris,* 346 S. W. 2d 61 (Mo. 1961).

*Exceptions overruled.*
*Judgments affirmed.*

HENNESSEY, J. (dissenting). I respectfully dissent because under the relevant statutes (G. L. c. 268, § 16A, and G. L.

c. 127, § 119) the defendants committed no crime. As in
*Commonwealth* v. *Hughes, ante,* 426, I believe that the
majority have failed to construe the statutes in appropriately
strict fashion.

First of all, I attach no significance here to the variance
between the proof and the indictments, which charged, pur-
suant to G. L. c. 268, § 16A, that each defendant "being a
prisoner in the Massachusetts Correctional Institution at
Framingham . . . did break therefrom and escape." The
stipulated facts make it clear that the defendants were con-
victed of violating that part of § 16A which prohibits an
escape "from the custody of any officer thereof" rather than
from the institution itself. The defendants do not rely upon
the formal defect, which in any event could readily have been
cured by amendment.

Nor is there any difficulty here, as there was in the *Hughes*
case, of identifying any conduct of the defendants as an
"escape," within the ordinarily accepted meaning of that
term. It is clear that the defendants deliberately removed
themselves from their detention in Westboro State Hospital
to which they had been properly ordered to be taken for
thirty days observation under the provisions of G. L. c. 123,
§ 18.

The only question is whether their escape was in violation
of c. 268, § 16A. I believe it was not.

The majority rely upon the provision in G. L. c. 127,
§ 119, that prisoners placed in a hospital or medical facility
are to be considered as in the custody of the officer having
charge of the prison, jail or house of correction. The clear
and only purpose of this statute is to ensure that time spent in
the hospital will be counted toward the completion of a
defendant's sentence.[1] To hold that its enactment suffices to

---

[1]The history of c. 127, § 119, gives no support to the theory that it was intended to
make any conduct criminal. The provision originated in St. 1882, c. 207, designated
"An Act to provide for the surgical treatment of certain prisoners." Section 2 of
that act contained language on custody and term of sentence similar to the current
provision. The language of this provision was changed slightly, and the substance
not at all, by St. 1906, c. 302, § 3, titled, "An Act to authorize the removal to
hospitals of prisoners requiring medical treatment," and again by St. 1967, c. 258,

make conduct criminal, which would not otherwise be so, unreasonably expands the meaning of an escape statute which on its face appears to specifically delineate the circumstances in which it will render an escape criminal. Furthermore, it violates the principle that criminal laws are to be strictly construed and are not to be extended by mere implication. *Commonwealth* v. *Paccia,* 338 Mass. 4, 6 (1958). See *Commonwealth* v. *Hughes, ante,* 426 (Hennessey, J., dissenting).

---

§ 2, titled, "An Act providing that a sheriff may, upon recommendation of the physician of a jail or house of correction, temporarily place a prisoner in a hospital or medical facility for treatment."