COMMONWEALTH *vs.* JAMES FAUST.

Middlesex. May 9, 1996. - July 25, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, GREANEY, & FRIED, JJ.

*Escape. Practice, Criminal,* Venue, Fair trial, Jury and jurors. *Constitutional Law,* Equal protection of laws, Fair trial.

A defendant committed to the Billerica house of correction, who was transferred to a community release house in Boston while still in the custody of the house of correction and the Middlesex County sheriff's department, was properly prosecuted in the Lowell District Court for escape from the release house inasmuch as the crime of escape is committed at the location of the penal institution from whose custody the prisoner removes himself. [301]

A prisoner who escaped from the custody of the Billerica house of correction and who was prosecuted in Lowell for the crime did not demonstrate any violation of his rights under the Sixth Amendment to the United States Constitution, which requires the prosecution to be in "the state and district wherein the crime shall have been committed," or under art. 13 of the Massachusetts Declaration of Rights, which requires the trial of criminal matters "in the vicinity where they happen." [301-303]

A criminal defendant demonstrated no violation of his rights to equal protection and a fair jury trial from his prosecution in the county in which the crime was committed. [303]

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on March 9, 1994.

A motion to dismiss was heard by *Neil J. Walker,* J., and the case was tried before *William E. Melahn,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Douglas J. Beaton* for the defendant.

*Kevin L. Ryle,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, James Faust, appeals from his conviction, in the Lowell Division of the District Court in Middlesex County (Lowell court), of escape by a prisoner. See G. L. c. 268, § 16 (1994 ed.). He asserts that the Lowell

court was an improper venue for his trial and that the proper venue was Suffolk County. We transferred the case to this court on our own motion. For the reasons stated in this opinion, we affirm the defendant's conviction.

The relevant facts are not in dispute.[1] The defendant was lawfully convicted by a jury of six in the Cambridge Division of the District Court Department, Middlesex County, and sentenced to a term of two-years' imprisonment at the Billerica house of correction, eighteen months to be served and the balance suspended to June 24, 1998. A mittimus issued remanding the defendant into the custody of the sheriff for Middlesex County. On February 2, 1994, the defendant was transferred by the Billerica house of correction (Middlesex County) to McGrath House, a community release facility located at 699 Massachusetts Avenue, in the Roxbury section of Boston (Suffolk County).[2] McGrath House is operated by the Middlesex County sheriff's department and houses only inmates from the Billerica house of correction. Inmates of McGrath House are still in the custody of the Billerica house of correction and the Middlesex County sheriff's department and governed by the same rules and regulations as inmates at Billerica. They may only leave McGrath House if they have submitted an itinerary and received permission from a correction officer.

On February 20, 1994, the defendant was given permission to leave McGrath House to attend a treatment meeting at the Cambridge courthouse. The defendant's itinerary provided that he was to leave McGrath House at 6:30 P.M. on February 20, 1994, and return at 10 P.M. that same night. Correction Officer Thomas Gannon was on duty at McGrath House from 4 P.M. on February 20, 1994, until 8 A.M. on February 21, 1994.[3] When the defendant did not return at the appointed hour, Officer Gannon reported the defendant to the Billerica house of correction as an escaped prisoner. Gannon wrote up a disciplinary report. At approximately 12:30 A.M. on Febru-

---

[1]The parties disagree as to the facts surrounding the defendant's failure to return to McGrath House by 10 P.M. Those facts are not relevant to the issues raised by the defendant and therefore we do not set them forth.

[2]He had received credit toward the eighteen-month sentence for time served while in custody awaiting trial for the original offense.

[3]Officer Gannon is employed by the Middlesex County sheriff's department.

ary 21, 1994, Deputy Superintendent Peter Bolton at the Billerica house of correction, after checking the Billerica records and confirming that the defendant was still in the custody of Billerica, prepared an "escape package" notifying the proper authorities of the defendant's escape. The defendant's property was returned to the Billerica house of correction. The defendant was arrested on the escape warrant and returned to the Billerica house of correction on April 4, 1994.

On March 9, 1994, a complaint was sworn in the Lowell court by Michael Roark of the Billerica house of correction charging the defendant with escape of prisoner in violation of G. L. c. 268, § 16.[4] The defendant repeatedly moved to dismiss the complaint for lack of venue. These motions were denied.

McGrath House is under the administrative jurisdiction of the Middlesex County sheriff's department and is operated and staffed by Billerica house of correction personnel. McGrath House inmates, all committed under mittimus to Billerica, are governed by the rules and regulations of the Billerica house of correction and remain in the custody of the Middlesex County sheriff's department. See *Commonwealth* v. *Reed*, 364 Mass. 545, 548 (1974) ("Legally, a prisoner transferred from the Massachusetts Correctional Institution, Framingham, to Westboro State Hospital remains in the 'custody of the officer having charge' of the Massachusetts Correctional Institution, Framingham"). We conclude that McGrath House is a branch of the Billerica house of correction.[5] Because McGrath House is a branch of the Billerica house of correction, inmates are constructively imprisoned at the Billerica house of correction while at McGrath House.

[4]General Laws c. 268, § 16 (1994 ed.), provides, in part, that "[a] prisoner of any penal institution . . . or a prisoner committed to any jail or correctional institution under a lawful order of a court, who escapes or attempts to escape from any such institution or from land appurtenant thereto, or . . . fails to return from any temporary release from said institution, center or branch, may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one-half years."

[5]Because we conclude that McGrath House is a branch of the Billerica house of correction, we do not reach the Commonwealth's argument that McGrath House is "appurtenant to" the Billerica house of correction for purposes of G. L. c. 268, § 16. See *id*. (prisoner who escapes from institution or land appurtenant thereto may be recaptured and punished).

See *Commonwealth* v. *Hughes,* 364 Mass. 426, 431 (1973) (defendant was still imprisoned at correctional facility and could be prosecuted for escape therefrom even though not within four walls of prison at time of escape).

The trial judge correctly determined that the defendant's failure to return after an authorized absence from McGrath House was an escape from the Billerica house of correction. See note 4, *supra* (criminalizing failure to return from temporary release from institution, center, or *branch*). Indeed, G. L. c. 268, § 16, has been construed as applying to all escaping prisoners. See *Commonwealth* v. *Pettijohn,* 4 Mass. App. Ct. 847 (1976).

The crime of escape is committed at the location of the penal institution where the prisoner was imprisoned and from whose custody the prisoner removes himself. Cf. G. L. c. 277, §§ 57-62 (1994 ed.) (fixing venue in doubtful cases). In this case, that location was the Billerica house of correction in Billerica, Middlesex County. The complaint, therefore, was properly brought and the trial properly held in the Lowell court. See G. L. c. 218, § 1 (1994 ed.) ("The district court of Lowell, held at Lowell [comprises] Lowell, Tewksbury, Billerica, Dracut, Chelmsford and Tyngsborough"). See also *Commonwealth* v. *Duteau,* 384 Mass. 321, 323 (1981) ("Massachusetts has generally followed the common law rule that [a complaint] must be found, and the trial must take place, in the county where the crime occurred").

Neither the defendant's rights under the Sixth Amendment to the United States Constitution nor under art. 13 of the Massachusetts Declaration of Rights are violated by his being tried in Lowell for a crime committed in Billerica. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . trial, by an impartial jury of the state and district wherein the crime shall have been committed." The jury which heard the defendant's case were all residents of the State of Massachusetts, which comprises a single Federal judicial district. See 28 U.S.C. § 101 (1994) ("Massachusetts constitutes one judicial district"). Because the crime was alleged to have been committed in Massachusetts, and the defendant was tried in Massachusetts, the defendant was tried by a jury of the State and district wherein the crime was committed. See *Commonwealth* v. *Duteau, supra* at 331 (it is generally agreed for purposes of

the Sixth Amendment requirement that the word "district" refers to the Federal judicial districts created by Congress). See also *Alvarado* v. *State*, 486 P.2d 891, 896 n.9 (Alaska 1971); *People* v. *Taylor*, 39 N.Y.2d 649, 653 (1976). The defendant's Sixth Amendment claim fails on its merits.[6]

The defendant's art. 13 claim is similarly without merit. Article 13 provides that "[i]n criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen."[7] Thus, while the drafters of the United States Constitution consciously chose the word "district" as opposed to the common law term "vicinage,"[8] see *Williams* v. *Florida*, 399 U.S. 78, 93-97 (1970), the drafters of the Massachusetts Declaration of Rights chose the popular word "vicinity" over the technical legal concept of "vicinage." "[T]he word *vicinity* is not technical, with a precise legal meaning, as the word *county* or the ancient word *visne*, vicinage, would be held to be" (emphasis in original). *Commonwealth* v. *Parker*, 2 Pick. 550, 553 (1824). See *Opinion of the Justices*, 372 Mass. 883, 897 n.8 (1977), in which the Justices opined that "[u]ndoubtedly, the increased mobility of people and ideas, caused by the advent of modern forms of transportation and communications, has resulted in an expanded concept of the territorial limits implied in the word 'vicinity.' "

[6]The provision of the Sixth Amendment to the United States Constitution at issue has not yet been held by the United States Supreme Court or by an appellate court of this Commonwealth to apply to State prosecutions, see *Commonwealth* v. *Duteau*, 384 Mass. 321, 331 (1981), and there is no clear consensus of opinion in our sister States. Compare *Alvarado* v. *State*, 486 P.2d 891, 897 (Alaska 1971), citing *Duncan* v. *Louisiana*, 391 U.S. 145 (1968) (Sixth Amendment "vicinage" requirement applies to States through Fourteenth Amendment to the United States Constitution) with *State* v. *Bowman*, 588 A.2d 728, 730 (Me. 1991), and cases cited (established general rule is that "vicinage" clause of Sixth Amendment applies only to prosecutions in Federal courts).

[7]The embodiment in art. 13 of the Massachusetts Declaration of Rights of the concept that a criminal defendant should be tried in the vicinity of where the crime was committed is declaratory of the sense of the people, that the proof of facts in criminal prosecutions should be in the vicinity or neighborhood where they happen. *Commonwealth* v. *Parker*, 2 Pick. 550, 553 (1824). See *Commonwealth* v. *Brogan*, 415 Mass. 169, 172 (1993).

[8]"Technically, 'vicinage' means neighborhood, and 'vicinage of the jury' meant jury of the neighborhood or, in medieval England, jury of the county." *Williams* v. *Florida*, 399 U.S. 78, 93 n.35 (1970).

We conclude that art. 13 is not violated by the trial of a criminal defendant in Lowell for a crime allegedly committed in Billerica. Lowell is in the vicinity of Billerica for purposes of satisfying the constitutional requirement of art. 13 because Lowell and Billerica are bordering municipalities in the same county and jurors for the Lowell court are drawn from a community which includes Billerica. Further, the Legislature has determined that Lowell is the proper venue for trial of crimes committed in Billerica. See G. L. c. 218, § 1.

The defendant's final claim is that trial in Lowell violates his rights to equal protection and a fair jury trial. He bases his claim on the disparity in minority representation between Middlesex and Suffolk Counties. The defendant is black and claims that trial in Middlesex County for a crime committed in Suffolk County violates his right to equal protection because it results in a jury chosen from a community with a substantially smaller minority population. See *Smith* v. *Commonwealth*, 420 Mass. 291, 293 (1995) (total minority population of Middlesex County is 10%; total minority population of Suffolk County is 38%). This claim must fail as we have already determined that the defendant's crime was committed in Middlesex County.

Because the defendant's crime was in effect committed in Middlesex County, the defendant is entitled to a jury venire representative of the population of Middlesex County, not one representative of Suffolk County. See *Smith* v. *Commonwealth, supra* (defendant has right to jury chosen from representative cross section of community in which the crime was committed). The defendant makes no claim and has produced no evidence that the jury venire from which his petit jury was selected was not a representative cross section of the Middlesex population. Because the defendant has not shown that minorities were excluded, intentionally or systemically, from sitting on the jury which heard his case, his claim of a violation of his right to equal protection fails.

*Judgment affirmed.*