## Commonwealth *vs.* Luis Rodriguez.

No. 00-P-132.

Essex. May 11, 2001. - September 21, 2001.

Present: Laurence, Cypher, & Doerfer, JJ.

*Practice, Criminal,* Sentence, Plea, Revocation of probation, Agreement between prosecutor and defendant. *Due Process of Law,* Probation revocation.

At a plea colloquy, the trial judge's reliance on a written form, signed by the defendant and referencing receipt by the defendant of information about the mandatory minimum or the maximum possible prison sentence, was an inadequate substitute for giving the advisement orally in open court and on the record, where the defendant was pleading guilty to a disposition of straight probation and could easily have failed to appreciate the consequences of such a plea and the fact that a prison sentence could be imposed if the defendant did not successfully complete the period of probation; although the event of sentencing was contingent, the sentencing upon realization of the contingency was not collateral to the crime to which the plea was given. [574-580]

On a motion to withdraw a guilty plea and for a new trial, the record did not indicate that justice was not done, where the defendant's plea was knowing, intelligent, and voluntary, despite the failure of the judge to inform the defendant in court and on the record of the mandatory minimum and maximum possible sentences that could be imposed if the probationary period was not successfully completed. [580-584]

Indictments found and returned in the Superior Court Department on December 14, 1994.

A proceeding for revocation of probation was heard by *Howard J. Whitehead,* J., and a motion to withdraw a guilty plea and for a new trial was heard by *John C. Cratsley,* J.

*Charles F. Willson* for the defendant.

*Daniel I. Smulow,* Assistant District Attorney, for the Commonwealth.

Doerfer, J. In 1995, the defendant was sentenced on a plea of guilty to two and one-half years in a house of correction for

receiving a stolen motor vehicle and placed on probation for two years without the imposition of any suspended sentence (straight probation) on a charge of masked armed robbery.[1] In 1999 he was found to be in violation of the terms of his probation for committing a number of felonies, including three counts of breaking and entering, and was sentenced on the armed robbery while masked conviction to a term of from five to seven years.[2] We conclude that the judge at the 1995 plea hearing should have specifically informed the defendant that the maximum sentence for armed robbery while masked was life in prison and that, if incarcerated for a violation of the terms of his probation, he would have to serve a minimum sentence of five years. See G. L. c. 265, § 17[3]; Mass.R.Crim.P. 12(c)(3), 378 Mass. 868 (1979). We affirm, however, the denial of the defendant's motion to withdraw his guilty plea and for a new trial on the grounds that the judge's deviation from rule 12 did not render the plea unintelligent, unknowing, or involuntary on the facts of this case, and the denial of his motion to withdraw his plea was not manifestly unjust.

1. *Facts.* The judge conducted a plea colloquy in which he carefully reviewed all of the defendant's constitutional rights and ascertained that the defendant understood them and agreed to waive them, without coercion. The government's evidence, to which the defendant agreed, was that the defendant drove a stolen getaway car in an armed robbery of a convenience store

---

[1]Probation commenced upon his release from the house of correction.

[2]He was first surrendered for his failure to report to his probation officer. His probation was extended for two years from the date of the surrender hearing. At that time the defendant was informed by the judge that any violation of the terms of his probation would result in a minimum mandatory prison sentence of five years. He was surrendered again, less than ten months later, based upon his arrest for several charges of breaking and entering. At the hearing on these violations the defendant, through counsel, and the probation department agreed on a "package disposition" in recognition of all his outstanding matters. The record does not reflect the disposition for the new offenses.

[3]See also G. L. c. 276, § 87, permitting any person to be placed on probation after a plea, finding, or verdict of guilty. Compare G. L. c. 266, § 14, as inserted by St. 1966, c. 330, which states in part that a sentence "shall not be suspended nor shall [the defendant] be placed on probation," and G. L. c. 90, § 24G (to the same effect), with G. L. c. 265, § 17, which contains no such limiting language.

with two other men who were masked, that he helped to plan the robbery, and that he shared in the proceeds. The judge, after hearing the slightly differing recommendations of the Commonwealth and defense counsel, told the defendant before the plea that he would follow the recommendation of both counsel as to straight probation on the armed robbery while masked charge, and the recommendation of defense counsel for a house of correction sentence on the stolen motor vehicle indictment.

Several months after the defendant began serving his State prison sentence he moved,[4] pursuant to Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), to withdraw his guilty plea and for a new trial on the armed robbery while masked indictment. After a hearing the judge (the same judge who had accepted the defendant's plea) denied the motion in a written memorandum, and the defendant appealed.[5] We discuss other facts as needed.

2. *The requirements of Mass.R.Crim.P. 12.*

a. *Sentencing information "where appropriate" must be given in a colloquy with the defendant in open court.* Rule 12(c)(3) of the Massachusetts Rules of Criminal Procedure sets forth the information which must be provided to the defendant during a plea colloquy to ensure that he has notice of the consequences of his plea.

> "The judge shall inform the defendant, or permit defense counsel under the direction of the judge to inform the defendant, on the record, in open court: . . . (B) where appropriate, of the maximum possible sentence on the charge, including that possible from consecutive sentences; of any different or additional punishment based upon second offense or sexually dangerous persons provisions of the General Laws, if applicable; and of the mandatory minimum sentence, if any, on the charge."

Neither the judge nor defense counsel advised the defendant in open court on the record about the mandatory minimum or

---

[4]We omit discussion of the defendant's pro se false starts along this path.

[5]The defendant has also appealed from the order revoking his probation and imposing the five to seven year sentence. This appeal was consolidated with the appeal from the denial of his motion under Mass.R.Crim.P. 30. The defendant has not argued any separate issues relating to the revocation of probation, and we do not discuss those orders further. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

the maximum possible sentence for committing masked armed robbery. The defendant and his counsel had signed a "waiver of rights" form which recited his constitutional rights and stated, in summary form, that the defendant had been made aware of the consequences of his plea, and that his decision was knowing and voluntary. For example, the defendant's form states that, "I have been advised by my attorney of the nature of the charge or charges to which I am entering my guilty plea . . . [and] of the nature and range of the possible sentence or sentences." During the colloquy the judge asked the defendant if he had read the form and if he had signed it, to which the defendant replied that he had. The judge did not, however, refer to the statutory minimum or maximum sentence provided for masked armed robbery.

The use of a written form referencing receipt of information, which is required to be given in a colloquy under rule 12, is an inadequate substitute for giving the advisement orally. To hold otherwise would be inconsistent with the plain language of rule 12(c)(3), which requires that advisements to the defendant be made "on the record, in open court." The reason for a statute or rule to require a colloquy is to enable the judge to "determine that the defendant has both received and understood the warnings . . . . During a colloquy, the judge has the opportunity to observe and interact with the defendant and . . . can communicate the warnings to the . . . defendant with greater assurance than can be supplied by the preprinted . . . form . . . ." (Footnotes omitted.) *Commonwealth* v. *Hilaire*, 51 Mass. App. Ct. 818, 823, *S.C.*, 434 Mass. 1107 (2001).

Federal cases considering this issue have reached a similar result relating to the requirements of Fed.R.Crim.P. 11.[6] See *United States* v. *Medina-Silverio*, 30 F.3d 1, 3 (1st Cir. 1994),

---

[6]Admittedly, the wording of Federal rule 11 is more emphatic than our rule: "(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court *must address the defendant personally in open court and inform the defendant* of, and determine that the defendant understands, the following . . . ." (Emphasis supplied.) Compare Mass.R.Crim.P. 12(c)(3): "The judge shall *inform the defendant*, or permit defense counsel under the direction of the judge to inform the defendant, *on the record, in open court* . . . ." (Emphasis supplied.) Nevertheless the import is the same, as both rules require the advisements to the defendant to be made "in open court."

quoting from *McCarthy* v. *United States*, 394 U.S. 459, 466-467 (1969) ("To the extent that the . . . [trial] judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the [trial] judge resorts to 'assumptions' not based upon recorded responses to his inquiries").

b. *A defendant who pleads to straight probation must be informed on the record, in open court, of the minimum mandatory and maximum sentences he faces upon a violation of the terms of probation.* Rule 12(c)(3)(B) requires that a defendant be informed about the maximum sentence and any minimum mandatory sentence "where appropriate." A defendant who is sentenced to a term of days, months, or years at the time of his plea of guilty but whose sentence is suspended and who is placed on probation knows precisely what sentence will be imposed if his probation is revoked. See *Commonwealth* v. *Holmgren*, 421 Mass. 224, 228 (1995). But if he is placed on a term of straight probation, a judge may later, upon the defendant's violation of the terms of his probation, impose any sentence permitted by law in recognition of the original offense. G. L. c. 279, § 3. "There is an aspect of continuing . . . jeopardy" in such a sentence. *McHoul* v. *Commonwealth*, 365 Mass. 465, 469 (1974). See *Commonwealth* v. *Christian*, 46 Mass. App. Ct. 477, 478 n.1, *S.C.*, 429 Mass. 1022 (1999).

Where there is no suspended sentence pending, § 3 makes it clear that the defendant is brought before the court for "sentencing" upon the violation of the terms of probation: "When taken before the court, it may, if he has not been sentenced, sentence him or make any other lawful disposition of the case, and if he has been sentenced, it may continue or revoke the suspension of the execution of his sentence . . . ." Thus, imposing a term of straight probation is not a sentence even though such a disposition may be appealed. See *Commonwealth* v. *Reed*, 364 Mass. 545, 546-547 (1974); *McHoul* v. *Commonwealth*, 365 Mass. at 469. See also *Korematsu* v. *United States*, 319 U.S. 432 (1943).

If, upon a violation of the terms of probation, a sentence is imposed upon a defendant who is on straight probation, the judge will take into consideration the traditional factors relevant to any sentencing decision,[7] and impose an appropriate sentence which reflects the original offense.[8] In this light, a period of straight probation is simply the deferral of a sentencing decision. Cf. *Commonwealth* v. *Christian*, 46 Mass. App. Ct. at 478 n.1, 482 n.5.

Thus, where a defendant is pleading guilty to a period of straight probation, it is "appropriate" under Mass.R.Crim.P. 12 to advise him of the maximum and minimum mandatory sentence for which he is at risk if he violates the terms of his probation at some future date.[9] A defendant, unless clearly instructed, can easily fail to appreciate the consequences of

---

[7]See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993), and cases cited, for a discussion of general sentencing factors.

[8]Although subsequent criminal conduct may be the *occasion* for revoking the probation, the sentence should not punish for such conduct. See *Commonwealth* v. *Goodwin*, 414 Mass. at 93; *Commonwealth* v. *Holmgren*, 421 Mass. at 227 n.1.

[9]Traditionally, and in the popular mind, a disposition of straight probation could be viewed as a very light punishment. See, e.g., 2 Blumenson, Fisher, & Kanstroom, Massachusetts Criminal Practice § 39.6C(1) (2d ed. 1998); 2 Krupp, Silverman, & Skinner, Massachusetts District Court Criminal Defense Manual § 15.4.1(c) (rev. ed. 2000). Historically, where judges wished to send a sterner signal, they would impose a suspended sentence which laid out a specific consequence of violation of the terms of probation (allowing, of course, for the possibility of continuation on probation for a more extended period of time). See *Commonwealth* v. *Holmgren*, 421 Mass. at 228, requiring that, if a sentence is suspended, the only sentence which can be imposed upon the revocation of probation is the one which was suspended.

Today, sentences to a house of correction can still be suspended. But after the passage of the Truth in Sentencing Act, St. 1993, c. 432, § 11, which, inter alia, amended G. L. c. 127, § 133, sentences to State prison may not be suspended. Thus, in serious felonies, a sentencing judge must choose either a sentence of commitment to State prison or straight probation.

The defendant in this case is a typical example. He was seventeen years old at the time of the plea hearing. He had no remarkable prior record. He was the "wheel man" in an armed robbery while masked, a very serious offense. Under the old system he could have been given a substantial suspended sentence, which would have included the minimum mandatory of five years at the lower end.

Being deprived of the tool of a suspended sentence and being unwilling to impose a minimum five-year prison sentence on this youthful first-time offender, the trial judge (and indeed all parties) agreed that straight probation,

pleading guilty to a disposition of straight probation. The plea itself wipes out any chance of mounting a defense to the underlying charge. The only possible future issues are (a) whether he has violated the terms of his probation and, if so, (b) the appropriate disposition for his previously admitted crime. A disposition of straight probation in this case was a continuance of a sentencing hearing to some future date where, in the event of a probation violation, the judge's discretion would be limited: He could continue probation or he could impose a minimum of five years up to a maximum of life. We hold that, in these circumstances, the judge should have applied the language of Mass.R.Crim.P. 12 and informed the defendant in open court and on the record that the crime to which he was pleading guilty carries a minimum five-year sentence to State prison and a maximum of life, to which he could be sentenced if he did not successfully complete his period of probation, and that if any period of incarceration were imposed it would be for at least a minimum of five years.

There are some consequences of a guilty plea that are properly regarded as contingent or collateral and thus, absent a statute or rule, not something about which the defendant must be advised prior to offering his plea. See, e.g., *Commonwealth v. Santiago*, 394 Mass. 25, 30 & n.6 (1985) (limitations on or requirements for parole are contingent consequences); *Commonwealth v. Hason*, 27 Mass. App. Ct. 840, 843 (1989) (immigration consequences are collateral and defendant need not be advised of them beyond what is required by G. L. c. 278, § 29D); *Commonwealth v. Albert A.*, 49 Mass. App. Ct. 269, 271 (2000) (requirement of registration pursuant to sex offender statute is a collateral consequence). In such cases the "consequence" is not a sentence to a period of incarceration for the crime in question but something that flows or may flow

following a period of incarceration on the companion charge, was a reasonable disposition. This enabled the judge to employ the "stick" of immediate calibrated punishment along with the "carrot" of a period of probation with a State prison sentence of undetermined length, not less than five years, hanging over the defendant's head. In this case there is little doubt that, if it had been available, a suspended sentence would have been imposed, with a statutory minimum of five years and a specified maximum, rather than a period of straight probation. Such a suspended sentence would have informed the defendant what he faced if he failed at probation.

secondarily from conviction or incarceration. This is not such a case. Here the consequence of a disposition of straight probation is the deferment of sentencing to some unknown term of incarceration for a period of time in which the risk of incarceration can be eliminated by successful completion of the probationary period.

Although the event of sentencing was contingent, the sentence upon the realization of the contingency was not collateral to the crime to which the plea was given. Rather, it was a direct consequence of, and in recognition of, the crime and the plea thereto, the deferment of which was terminated by the poor conduct of the defendant. The ramifications of a defendant's violation of the terms of his probation do not come about due to his status as a prisoner, an alien, or due to the sexual nature of his crime. Rather, they are directly related to the sentencing range attributed to the crime to which the defendant pleaded guilty and for which he was convicted. Thus, a defendant cannot appreciate the nature of his probationary disposition without understanding the possible sentence he avoids serving by successfully completing his probation.

It is true that a defendant who enters into a plea bargain for less than the maximum sentence available under the law cannot be heard to complain, upon being sentenced within the limits of the plea bargain, that he was not advised of the maximum sentence provided by law. *Commonwealth* v. *Curry*, 6 Mass. App. Ct. 928, 929 (1978). *Commonwealth* v. *Cavanaugh*, 12 Mass. App. Ct. 543, 546 (1981). Here both the defendant and the prosecutor agreed that the defendant would receive probation on the armed robbery while masked indictment. Although they did not agree on the sentence for receiving a stolen motor vehicle, the plea judge adopted defense counsel's recommendation and informed the defendant of his commitment to do so before he took the plea. Thus the defendant was not at risk of receiving anything more *at that time* as a consequence of his plea. But, because the disposition of the armed robbery while masked charge was to straight probation, and not to a definite sentence (suspended or not), it was nevertheless "appropriate" to advise the defendant of the maximum sentence available and the minimum mandatory sentence he could receive if he were to

violate the terms of his probation. Thus, we conclude that Mass. R.Crim.P. 12 required the judge to inform the defendant, on the record, in open court, of the mandatory minimum and maximum possible sentence for masked armed robbery.

3. *Denial of the motion to withdraw guilty plea and for new trial.* Under Mass.R.Crim.P. 30(b), a motion for new trial may be allowed "at any time if it appears that justice may not have been done." We will not assume that the defendant's plea was involuntary and unknowing and say as a matter of law that justice was not done simply because the record reflects noncompliance with rule 12. *Commonwealth* v. *Nolan,* 16 Mass. App. Ct. 994, 995 (1983). "[W]hile compliance with the procedures set out in rule 12(c) is mandatory, adherence to or departure from them is but one factor to be considered in resolving" whether a plea was knowingly and voluntarily made. *Commonwealth* v. *Johnson,* 11 Mass. App. Ct. 835, 841 (1981). Each case must be analyzed individually to determine whether compliance with rule 12 would have made a difference in the decision of the defendant to plead guilty.[10] *Commonwealth* v.

---

[10]Cases interpreting Fed.R.Crim.P. 32(d) (now rule 32[e]) (a District Court judge may allow a motion to withdraw a guilty plea upon showing of "any fair and just reason") provide helpful guidance on this issue. As set forth in *United States* v. *Gray,* 63 F.3d 57 (1st Cir. 1995), the factors to be considered are "1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement. . . . These factors are relevant to the ultimate issue to be addressed, namely, whether the plea was 'knowing, voluntary and intelligent within the meaning of [Fed.R.Crim. P.] 11.' " *Id.* at 60, quoting from *United States* v. *Cotal-Crespo,* 47 F.3d 1, 3 (1st Cir. 1995).

The Federal courts have identified three "core concerns" of Rule 11: "1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea. . . . While technical violations of Rule 11 may often be deemed harmless, a total failure to address one of Rule 11's 'core concerns' mandates that the guilty plea be set aside. . . . In the absence of such a 'total failure,' the question to be determined is whether deficiencies in the Rule 11 hearing affected the defendant's 'substantial rights.' . . .

"In determining whether there has been a violation of one of the core concerns of Rule 11, we review the totality of the circumstances surrounding the Rule 11 hearing at which the defendant pled guilty. . . . We have explained that 'what is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the

*Russell*, 37 Mass. App. Ct. 152, 157 (1994), cert. denied, 513 U.S. 1094 (1995), citing *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 499 (1985). The defendant has the burden of showing any special circumstances relating to his plea that demonstrate that denial of his motion to withdraw his plea would work an injustice. See *Commonwealth* v. *Hason*, 27 Mass. App. Ct. at 844. A judge should allow a postsentence motion to withdraw a guilty plea only if the defendant comes forward with a credible reason for withdrawing the plea that outweighs the risk of prejudice to the Commonwealth. *Commonwealth* v. *DeMarco*, 387 Mass. 481, 486 (1982).

The purpose served by the requirements of rule 12 is to ensure that a defendant's plea of guilty is knowing, intelligent, and voluntary. The defendant's postconviction motion to withdraw a guilty plea is treated as a motion for a new trial, *Commonwealth* v. *DeMarco*, 387 Mass. at 482, is addressed to the sound discretion of the trial judge, and, absent constitutional error, will not be reversed unless it appears that justice may not have been done. *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995). Mass.R.Crim.P. 30(b). As a general proposition of constitutional law, a guilty plea must be vacated or nullified unless the record of the plea proceedings demonstrates that the defendant entered the plea knowingly and voluntarily. *Boykin* v. *Alabama*, 395 U.S. 238, 242-243 (1969).[11]

The facts in this case do not justify the withdrawal of the plea or the allowance of the motion for a new trial. At the time of his plea the defendant had the. choice of pleading within the parameters explained by his attorney, the district attorney, and the trial judge, or of going to trial. He has provided no plausible evidence that, if fully informed, he would have preferred to go to trial and face a five-year minimum mandatory sentence if found guilty. He has not addressed why he would have benefited from going to trial, and he has made no claim of innocence. See

defendant, rather than the form of the communication.' " (Citations omitted.) *United States* v. *Gray, supra* at 60.

[11]There are several elements that comprise a knowing and voluntary plea. We focus our attention in this instance on the requirement that a defendant's plea be entered "with an understanding of the nature of the charge and the consequences of the plea." *Commonwealth* v. *Russin*, 420 Mass. at 318. See *Brady* v. *United States*, 397 U.S. 742, 748 (1970).

note 10, *supra.* He has not referred to weaknesses in the Commonwealth's case or to any possible defense. In short, for all that appears in the record, his choice was essentially whether to do a five-year stretch in State prison immediately or to try to stay out of trouble for two years after he completed his house of correction time. He was offered and accepted a very favorable disposition of a serious felony charge, for which no other disposition was available except an immediate sentence to a minimum of five years in State prison.

He has not even shown that some other disposition on his plea to the armed robbery while masked charge could have been more favorable. His affidavit in support of his motion is not plausible. He claims, for example, that he would have preferred to accept a plea bargain in which he went to State prison for three to five years and claims this is what his codefendants received as a sentence in their cases. Assuming all three were charged, as was the defendant, with armed robbery while masked, the codefendants could not have received less than a five-year minimum unless they were allowed to plead to a lesser included charge, and so much of the indictment as alleged "masked" was nol prossed. There is nothing in the record to show that happened or that the prosecutor would have agreed to such a disposition (which would be necessary for the nolle prosequi). Furthermore, the record shows that the prosecutor's recommendation of from three to five years in State prison, which was not accepted by the defendant, applied to the indictment for receiving a stolen motor vehicle, not to the indictment for armed robbery while masked. The prosecutor always insisted on a period of probation for the armed robbery while masked in addition to three to five years in State prison for receiving a stolen motor vehicle. Any belief by the defendant to the contrary is not supported by anything other than his affidavit, which need not be accepted at face value, *Commonwealth* v. *Lopez*, 426 Mass. 657, 661-662 (1998), especially in view of contrary evidence in the record. In all likelihood his decision to plead was based on his assessment of the evidence against him, see *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 618 (1974), and his understanding that he was benefiting from a favorable disposition.

The defendant was represented by, and had the advice of, able counsel throughout. "Representation and consultation with counsel are significant factors in determining whether a guilty plea . . . not accompanied by a [sufficient plea colloquy] was, nonetheless, knowingly and voluntarily made." *Commonwealth* v. *Russell*, 37 Mass. App. Ct. at 157. The defendant's claim that his attorney did not advise him of the minimum mandatory or maximum sentences for masked armed robbery is suspect. Although the forms referred to above were insufficient to substitute for a colloquy on the issue of the minimum and maximum sentence, they are relevant to whether he had actual knowledge of the relevant information and whether he faces an injustice if he is not allowed to withdraw his plea. The judge specifically asked the defendant if he had read the form and if it was indeed the defendant's signature affixed to the document. The defendant answered yes to both questions. The form thus provides some evidence on a motion for new trial that, contrary to his present protestations, the defendant and his counsel discussed the ramifications and benefits of his plea. See *Commonwealth* v. *Grant*, 426 Mass. 667, 672 (1998).

Even given the severe penalties awaiting him if he violated the terms of his probation, the defendant held the keys to his freedom from that threat. It is unlikely in the extreme that, if given full information by the judge in open court and on the record relating to possible sentences upon a violation of the terms of his probation, he would have declined to plead guilty to a disposition of probation on the charge of armed robbery while masked. A plea of guilty is made under a variety of considerations and pressures, no one of which necessarily renders the plea involuntary. See *Commonwealth* v. *Santiago*, 394 Mass. at 30. See also *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. at 621 n.6. Any omissions in the plea colloquy were thus, on these facts, harmless.

We conclude that the "record, considered in light of the discretion given to judges dealing with rule 30(b) motions," does not indicate "that denial of the defendant's motion was 'manifestly unjust.' " (Citation omitted.) *Commonwealth* v. *Grant*, 426 Mass. at 673. Although we agree with the defendant

that the plea colloquy was incomplete, we are nonetheless satisfied that justice has been done in this case.

> *Order denying motion to withdraw guilty plea and for new trial affirmed.*
>
> *Order revoking probation and imposing sentence affirmed.*