NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-113

COMMONWEALTH

vs.

SAMUEL WARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2012, pursuant to a plea agreement, the defendant, Samuel Ward, admitted to sufficient facts to warrant an adjudication as a youthful offender on three counts related to a violent drug-dealing incident. Nine years later, after he was charged with new offenses and arraigned as an armed career criminal under G. L. c. 269, § 10G (a), he moved to withdraw his guilty plea. He claimed, inter alia, that his plea was not knowing and intelligent because he was not informed by the judge or his plea counsel that he could potentially face such future sentencing enhancements. The motion judge, who also presided over his original plea and sentencing hearing, denied the motion without an evidentiary hearing. We affirm.

Background. In December 2011, while at a marijuana dealer's apartment to buy drugs, the then sixteen year old

defendant produced a handgun from his pocket and used the handle of the weapon to club the dealer in the head between fifteen and twenty-five times.  The victim and another eyewitness cooperated with the police investigation and testified before the grand jury.  The defendant was indicted as a youthful offender on one count each of armed home invasion, G. L. c. 265, § 18C, assault and battery with a dangerous weapon (ABDW), G. L. c. 265, § 15A, and armed robbery, G. L. c. 265, § 17.

With the advice of his appointed counsel, the defendant accepted a plea agreement and was adjudicated a youthful offender.  The defendant's presentence report disclosed that he was a special education student with social and emotional deficits, substance abuse issues, attention deficit hyperactivity disorder, and behavioral health problems.  The judge conducted a colloquy with the defendant during his plea hearing in March 2012 and found that the defendant knowingly, intelligently, and voluntarily waived his rights.  The judge failed, however, to inform the defendant on the record of the mandatory minimum and maximum possible sentences that he could face, as was required by Mass. R. Crim. P. 12 (c) (3), as appearing in 442 Mass. 1511 (2004).[1]

---

[1] The rule has since been amended several times, but the requirement remains in place.  See Mass. R. Crim. P. 12 (c) (3) (A) (ii), as amended, 489 Mass. 1501 (2022).  References to rule 12 herein are to the 2004 version unless otherwise noted.

During the sentencing portion of the hearing, the victim gave an impact statement saying that he thought the defendant "should be going away." The judge then sentenced the defendant, on the armed home invasion and armed robbery adjudications, to the recommended five years commitment to the Department of Youth Services (DYS). The judge determined, however, with the defendant's assent, that probation on the ABDW adjudication would begin immediately, rather than upon release from his DYS commitment (as was recommended), and would terminate on the recommended date in 2021, thus lasting for nine years.

In 2016, while still on probation, the defendant was arrested and arraigned as an armed career criminal (ACC) under G. L. c. 269, § 10G (a), with the 2012 adjudications serving as the predicate offenses.[2] He was found to be in violation of the terms of his probation on the ABDW adjudication and was sentenced to two years in the house of correction.

In March 2021, the defendant filed a "motion to withdraw his guilty plea and motion for a new trial," arguing that plea counsel was ineffective in 2012 in failing to inform the defendant that the victim and the other eyewitness, because of

---

[2] The ACC statute, G. L. c. 269, § 10G (a), enhances the sentence for anyone, "having been previously convicted of a violent crime or of a serious drug offense," who unlawfully carries or possesses a firearm or ammunition under G. L. c. 269, § 10 (a), (c), or (h).

their involvement in the drug deal, might have invoked their privilege against self-incrimination had the defendant's case gone to trial. The defendant also claimed that his decision to accept the plea agreement was not made knowingly or intelligently, because of the combined failure of the judge and plea counsel to mention the minimum and maximum sentences and "any different or additional punishment for subsequent offense[s]," including future ACC charges. Mass. R. Crim. P. 12 (c) (3). The judge denied the motion without an evidentiary hearing, and the defendant filed this appeal.

Discussion. 1. Standard of review. "A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001)." Commonwealth v. Furr, 454 Mass. 101, 106 (2009). A judge may grant a motion for a new trial "only 'if it appears that justice may not have been done'" (citation omitted). Id. We review the judge's decision for "a significant error of law or other abuse of discretion," giving particular deference when, as here, the motion judge was also the plea judge. Commonwealth v. Scott, 467 Mass. 336, 344 (2014), quoting Commonwealth v. Sherman, 451 Mass. 332, 334 (2008). We reverse an order denying such a motion only when the decision is "manifestly unjust" or the proceeding "was infected with prejudicial constitutional error" (citation omitted). Furr, supra. "This strict standard . . .

4

promotes judicial efficiency and finality by discouraging a defendant from entering a guilty plea 'to test the weight of potential punishment' . . . only to seek to withdraw the plea later when adverse consequences appear, especially consequences not even contemplated at the time of the plea." Commonwealth v. Lopez, 426 Mass. 657, 662-663 (1998).

"[T]he judge may decide a rule 30 (b) motion based solely on affidavits; may discredit untrustworthy affidavits . . . and need only proceed to evidentiary hearing 'where a substantial issue is raised [by the motion or affidavits] and is supported by a substantial evidentiary showing'" (citation omitted). Lopez, 426 Mass. at 663.  We review the motion judge's decision not to hold an evidentiary hearing for abuse of discretion.  See Commonwealth v. Goodreau, 442 Mass 341, 348 (2004).  We accept the judge's findings of fact unless clearly erroneous and his credibility determinations as final.  See Scott, 467 Mass. at 344.

2. Ineffective assistance of counsel.  The defendant argues that plea counsel was ineffective in failing to advise him (1) that the victim and eyewitness would likely assert their privilege against self-incrimination and thus be unavailable to testify at trial and (2) that his adjudication could serve as a predicate for a future ACC sentencing enhancement.  In an affidavit accompanying his motion for a new trial, the defendant

5

asserted that "[a]t no point prior to . . . taking [his] plea did [plea counsel] have a conversation with [him] about the Fifth Amendment privilege," and, had counsel told him that the victim and eyewitness could have claimed the privilege, he would have "elected to set the matter for trial" instead of taking the plea agreement. He also stated that the fact "that the charges to which [he] was pleading could serve as the basis for a later charge as an armed career criminal . . . would have been important information for [him] to have in deciding how [he] wished to resolve [his] case," but that plea counsel "never mentioned anything specific about guns and certainly never mentioned the term 'armed career criminal.'"

For his part, plea counsel indicated that his files on the defendant's case had already been destroyed as a matter of routine, but that he had a partial record of communicating with the defendant and the defendant's parents, before the defendant accepted the plea agreement, about "future consequences, direct and collateral, for violation of [probation]." Counsel also had a specific memory of discussing with the defendant "the potential for consequences of his plea affecting other aspects of his life, [including] potential unknown consequences due to the felony conviction," such as "enhanced penalties . . . [for] future gun [violent crimes] and drug offenses." Finally, counsel represented that it was his "general practice to explain

to all clients what evidence may, and may not, get introduced should the case proceed to trial," but that he had no specific memory of discussing the victim's or witness's self-incriminating testimony with the defendant.  The judge generally credited the plea counsel's representations (as set forth in the affidavit of the defendant's appellate counsel) and discredited the defendant's affidavit.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "Where a new trial is sought based on a claim of ineffective assistance of counsel, the burden of proving ineffectiveness rests with the defendant."  Commonwealth v. Montez, 450 Mass. 736, 755 (2008).

a.  Witnesses' privilege against self-incrimination.  The defendant argues on appeal that the judge should have held an evidentiary hearing to determine whether plea counsel actually advised the defendant about the possibility that the witnesses could decline to testify, as counsel's statements did not directly contradict the defendant's assertion that the topic was never discussed.

Regardless whether such a conversation actually occurred -- and the judge below seemed to find that it did -- we agree with the judge that, because it was so speculative that the witnesses would have invoked their privilege, the defendant failed to meet his burden to demonstrate that he was "likely deprived . . . of an otherwise available, substantial ground of defense." Saferian, 366 Mass. at 96. The two witnesses, despite the incriminating circumstances, had already cooperated with the police investigation and testified to the grand jury, where they could have asserted their privilege if they thought it necessary. See United States v. Washington, 431 U.S. 181, 186 (1977). Moreover, the victim, apparently spurred by his desire to see the defendant punished, voluntarily appeared and spoke in open court at sentencing, moments after his role in the drug deal was read into the record. Although the victim was not asked about the incriminating circumstances, his statement evinces the unlikelihood of his claiming the privilege had he been called to testify at trial. Contrary to the defendant's argument on appeal, the likelihood that the witnesses could have claimed the privilege is not the same as the likelihood that they would have done so.[3] The Fifth Amendment to the United

---

[3] At oral argument the defendant suggested a new basis for finding prejudice based on counsel's advice. The defendant argued that, had he been advised of the mere possibility that

8

States Constitution "does not preclude a witness from testifying voluntarily in matters which may incriminate him, . . . for those competent and free willed to do so may give evidence against the whole world, themselves included" (quotations and citation omitted).  Washington, supra at 186-187.

b.  Future ACC charges.  The defendant also argues that the judge erred in rejecting his claim that he received ineffective assistance where plea counsel did not advise him about the possibility of future ACC charges.  We are unpersuaded.

First, the motion judge found that the defendant was, in fact, advised about enhanced sentences for future drug and gun crimes.  Based as it was on plea counsel's specific memory, this finding was not clearly erroneous.

Second, the judge correctly concluded that no such warning was required in order for the defendant to receive

_____

the witnesses could have invoked their privilege, he would have rejected the plea agreement, moved forward to trial, attempted to determine if the witnesses would indeed invoke their privilege, and, if they would not, offered to accept the plea agreement anew.  This speculative scenario was not set forth in the defendant's affidavit, or in the memorandum in support of his "motion to withdraw his guilty plea and motion for a new trial," or even in his appellate brief.  The Commonwealth has had no opportunity to respond to it with evidentiary material or written argument, and the motion judge made no findings about it.  The prejudice argument the defendant made to the motion judge was simply that, had he been properly advised, he would have proceeded to trial and "the case would likely have been dismissed on that [trial] date."  Thus we decline to consider further the defendant's new argument on this record.

9

constitutionally adequate assistance of counsel.  The defendant relies on professional standards published by bar organizations to support the proposition that his attorney should have advised him about future ACC charges.  Although there may well be wisdom in such recommendations, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are [only] guides to determining what is reasonable." Strickland v. Washington, 466 U.S. 668, 688 (1984).  The Supreme Judicial Court has rejected the argument that "a failure to advise a defendant of all possible collateral consequences results in constitutionally ineffective assistance." Commonwealth v. Henry, 488 Mass. 484, 497 (2021).  This includes a failure to advise of "possible future sentencing enhancements should [the defendant] be convicted of another crime," id., which are contingent on the defendant's own future conduct.

3. Plea colloquy.  Finally, the defendant contends that his plea colloquy was constitutionally inadequate because the judge failed to inform him, on the record in open court, of (1) the mandatory minimum and maximum possible sentences for the crimes to which he admitted, and (2) the possibility that he could face future ACC sentence enhancements.  He argues that these omissions are especially prejudicial in light of his age and cognitive limitations, which prevented him from

understanding the long-term consequences of his plea. The argument is unavailing.

It is true that rule 12 (c) (3) (B), as then in effect, required the judge to inform the defendant of the mandatory minimum and maximum possible sentences for the crimes to which he admitted, including in particular for the ABDW charge for which he received probation, and the record is clear that no such warning was issued to the defendant in court. The same requirement is in effect today. See note 1, supra. See generally Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 579 (2001) (where defendant sentenced to straight probation, warning about minimum and maximum sentences he could receive if he violated probation was appropriate). However, "[w]e will not assume that the defendant's plea was involuntary and unknowing and say as a matter of law that justice was not done simply because the record reflects noncompliance with rule 12." Id. at 580. Instead, we ask "whether compliance with rule 12 would have made a difference in the decision of the defendant to plead guilty." Id.

We accept the judge's determination below that the defendant did not present "plausible evidence that, if fully informed, he would have preferred to go to trial" and risk the twenty-year mandatory minimum sentence for the armed home invasion charge if found guilty, rather than the possible ten-

11

year sentence he could have faced on the ABDW charge if he violated probation. See Commonwealth v. Murphy, 73 Mass. App. Ct. 57, 67-69 (2008); Rodriguez, 52 Mass. App. Ct. at 581-583. Indeed, the judge's conclusion is supported by the defendant's own affidavit, in which (as mentioned supra) the defendant claimed only that the maximum sentence "would have been important information to have," not that it would have changed his mind about accepting the agreement. The judge's determination is also bolstered by the very favorable disposition offered in the agreement, the multi-year delay between the disposition and the filing of the motion, the fact that the motion was filed only after the defendant faced ACC charges as a result of the adjudications, and the absence of any assertion of factual innocence or of a viable defense. See Murphy, supra. Thus the failure to inform the defendant of the minimum and maximum sentences for ABDW did not invalidate the plea.

Much the same reasoning applies to the failure to warn the defendant about future ACC charges. Even if the language of rule 12 did require such a warning, as the defendant contends,[4]

---

[4] Rule 12 (c) (3) (B), as then in effect, required the judge to inform the defendant of "any different or additional punishment based upon subsequent offense . . . provisions of the General Laws, if applicable." Accord Mass. R. Crim. P. 12 (c) (3) (A) (ii) (a), as amended, 489 Mass. 1501 (2022). The defendant

12

we would still agree that the omission made no difference to the defendant's decision to admit to the charges.  This is especially true where the judge found that plea counsel told the defendant about potential future sentencing enhancements, and so the defendant would have had actual knowledge of the possibility even without the judge's warning.

Because we agree that neither of the omissions in the colloquy made a difference to the defendant's decision to admit to sufficient facts, we need not address his claim that his age and cognitive limitations hindered his ability to enter a knowing and intelligent plea with those consequences in mind. We note, however, that the judge was aware of those limitations before the colloquy; that the defendant was well-acquainted with the criminal justice system (having appeared before the same judge on twenty-four different occasions); that the defendant's parents were present at his plea; and that he was represented by able counsel at all stages of the case.  See Commonwealth v. Russell, 37 Mass. App. Ct. 152, 157 (1994), cert. denied, 513

_____

asserts that this language refers to the potential for future sentencing enhancements, on future offenses, if the defendant pleads guilty, not just those enhancements which will be applied to the sentence on the pending charges.  Because we agree that such information would not have changed the defendant's decision, we need not consider whether his interpretation is correct.

U.S. 1094 (1995) (considering similar circumstances in affirming order denying motion for new trial).

> Order denying motion for new trial affirmed.
>
> By the Court (Sacks, Shin & D'Angelo, JJ.[5]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered:  July 7, 2023.

---

[5] The panelists are listed in order of seniority.