## COMMONWEALTH *vs.* KASHMONI MURPHY.

No. 06-P-969.

Essex. December 18, 2007. - October 30, 2008.

Present: DUFFLY, GRAHAM, & KATZMANN, JJ.

*Practice, Criminal,* Sentence, Plea, Probation, Assistance of counsel, Appeal. *Due Process of Law,* Sentence, Plea, Appeal. *Constitutional Law,* Assistance of counsel. *Waiver.*

Discussion of the standard of review applied to unpreserved claims related to ineffective assistance of counsel in a criminal matter. [60]

Discussion of constitutional requirements for the validity of a guilty plea, and the procedures by which trial judges are to ascertain the voluntariness and intelligence of a plea [61-62], and discussion of the codification of these constitutional requirements in Mass.R.Crim.P. 12(c)(3) [62-64].

A Superior Court judge did not adequately inform a criminal defendant of the consequences of his guilty pleas to the crimes charged, where the judge, at the outset of the defendant's hearing, merely described the sentencing range applicable to each indictment if the defendant were to receive a committed prison sentence, without conveying that the minimum and maximum sentence of incarceration could be imposed on the defendant if he did not successfully complete his period of probation. [64-67] GRAHAM, J., concurring.

A criminal defendant appealing the denial of his second motion to withdraw guilty pleas and for a new trial did not demonstrate that defense counsel's failure to appeal the denial of the defendant's first new trial motion (in which the judge incorrectly concluded that the portion of the plea colloquy related to the consequences of the guilty pleas was adequate) likely deprived the defendant of an otherwise available, substantial ground of defense. [67-69]

INDICTMENTS found and returned in the Superior Court Department on October 8, 1997.

Following pleas of guilty and a proceeding for revocation of probation, a second motion to withdraw the guilty pleas and for a new trial, filed on March 9, 2006, was considered by *Isaac Borenstein*, J.

*Karen Logee Swenson* for the defendant.

*David F. O'Sullivan*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. In 1998, the defendant pleaded guilty to several offenses including home invasion, and five counts of armed assault in a dwelling, which are the subject of this appeal.[1] The disposition as to these offenses was straight probation: concurrent, three-year probationary terms.[2] He later was found to be in violation of his probation and received the mandatory minimum sentence of from twenty years to twenty years and one day on the home invasion charge, and concurrent life terms (the maximum sentence) for each count of armed assault in a dwelling.[3]

This is the defendant's appeal from the denial without a hearing of his second motion to withdraw his guilty pleas and for a new trial, pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). He asserts several claims of error.[4] We address here his claim that counsel (motion counsel) was ineffective for failing to appeal the denial of his first new trial mo-

---

[1] He also pleaded guilty to two counts of armed robbery, for which he received committed sentences of from three years to three years and one day. His concurrent terms of straight probation on the other charges were to commence from and after the committed sentences on the armed robbery indictments.

[2] "The imposing of straight probation means that the defendant was not given a suspended sentence, but merely placed on probation for a certain term." *Commonwealth* v. *Nunez,* 446 Mass. 54, 55 n.1 (2006). "[A] suspended sentence would have informed the defendant what he faced if he failed at probation." *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. 572, 577 n.9 (2001).

[3] Also at the 1998 plea hearing, the defendant pleaded guilty to a charge of assault and battery with a dangerous weapon. The record does not disclose the disposition of this charge.

[4] On appeal, the defendant claims he is entitled to withdraw his guilty pleas because (1) the judge failed to advise him of the sentences he faced should he violate his probation; (2) his plea counsel was constitutionally ineffective for similarly failing so to advise the defendant; (3) his plea counsel was ineffective for allowing, and participating in, a discussion with the prosecutor and the judge concerning disposition of the charges in the defendant's absence; (4) the judge did not adequately explain to the defendant the elements of the charged offenses, thus rendering the pleas not intelligently made; and (5) the judge exceeded his authority by placing the defendant on probation after his pleas. He also argues on appeal that the motion judge erred in denying his first motion for a new trial and that his motion counsel was thus ineffective for failing to appeal from the denial of his first motion.

We discuss only arguments related to the claimed ineffectiveness of counsel; other claims are either without merit or have been waived in that they were raised for the first time in this appeal. We decline to exercise our discretion to discuss them.

tion, and the issue this claim implicates: whether the defendant's plea was not intelligent and voluntary in the constitutional sense because the defendant was not fully informed of the consequences of his plea. We agree that *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. 572 (2001), requires that "[a] defendant who pleads to straight probation must be informed on the record, in open court, of the minimum mandatory and maximum sentences he faces upon a violation of the terms of probation," *id.* at 576, and that he was not so informed. However, we conclude that the defendant has not established that the omission created a substantial risk of a miscarriage of justice and affirm. We do not address the claims raised in connection with the defendant's appeal from the denial of his second motion for new trial, as they are subsumed in our decision, or have been waived.

1. *Procedural background.* The defendant was charged in indictments alleging that he and an armed accomplice broke into a home in the city of Lynn, and assaulted and robbed the three women inside. As noted above, he pleaded guilty and served his committed time on the charges of armed robbery (not implicated in this appeal) and was released. The defendant was serving his three-year term of straight probation when, in April, 2003, he was found to have violated probation and was given the minimum mandatory sentence (twenty years) on the home invasion charge and the maximum possible sentences (imprisonment for life) on each of five counts of armed assault in a dwelling.

In October, 2003, the defendant, now represented by motion counsel, filed a motion to withdraw his guilty pleas and for a new trial, pursuant to Mass.R.Crim.P. 30(b). He claimed that his pleas were not voluntary and intelligent because he was not adequately informed of the consequences of them. Specifically, he cites the judge's failure to convey that the minimum and maximum sentences attendant to the charged crimes remained applicable although he received straight probation on them, which took effect after the committed time on the armed robbery charges. This motion was denied and the defendant did not appeal. In March of 2006, the defendant, now acting pro se, filed a second motion to withdraw his pleas, later amended to add an additional claim; the Commonwealth filed no opposition. The same judge who had presided over the defendant's change of plea hearing

and prior motion to withdraw denied the second motion in a marginal notation and this appeal followed.

2. *Discussion. a. Standard of review.* The defendant's claim that his motion counsel was ineffective was first raised in his reply brief on appeal and is waived; also waived is the related claim, raised in the first motion for a new trial, that his pleas were neither voluntary nor intelligent because he was not adequately informed of the consequences flowing from them. We nevertheless address these interrelated claims. See *Commonwealth v. Perry*, 65 Mass. App. Ct. 624, 634 (2006) (despite impropriety of presenting claims for the first time in the reply brief, claims were addressed "in order to forestall any future claim that appellate counsel was ineffective"). "All claims, waived or not, must be considered. The difference lies in the standard of review that we apply when we consider the merits of an unpreserved claim." *Commonwealth v. Randolph*, 438 Mass. 290, 293-294 (2002) (footnote omitted). That is particularly appropriate where, as here, the parties have fully briefed the issue that is at the crux of the appeal. Contrast *Dutil, petitioner*, 437 Mass. 9, 21-22 (2002).

In these circumstances, we "review any error to determine whether it may have created a substantial risk of a miscarriage of justice." *Commonwealth v. Walker*, 443 Mass. 867, 871 (2005) (involving waived claims that unappealed ruling was clearly erroneous and counsel's failure to appreciate merits of appeal constituted ineffective assistance). See *Commonwealth v. Acevedo*, 446 Mass. 435, 442 (2006) (review of motion for new trial, whether based on error or as claim of ineffective assistance, is "solely to determine whether the error gives rise to a substantial risk of a miscarriage of justice"). See also *Commonwealth v. Delong*, 60 Mass. App. Ct. 122, 132 (2003).

In considering the defendant's claim that his motion counsel was ineffective, we must first determine whether the plea judge erred in failing to inform the defendant of the consequences he faced if he did not successfully complete his term of straight probation. If the judge erred, we then consider whether counsel's failure to appeal "likely deprived the defendant of an otherwise available, substantial ground of defence," *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974), thereby creating a substantial risk of a miscarriage of justice. *Commonwealth v. Walker*, 443 Mass. at 871.

*b. Intelligence and voluntariness of guilty plea.* To inform our discussion we begin by setting out the well-established principle "that, as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must later be set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly." *Commonwealth* v. *Foster,* 368 Mass. 100, 102 (1975). See *Commonwealth* v. *Hiskin,* 68 Mass. App. Ct. 633, 637, 639 (2007) (to be valid, guilty plea must be both intelligent and voluntary). These constitutionally based requirements were made applicable to the States by *Boykin* v. *Alabama,* 395 U.S. 238 (1969); the procedures by which trial judges were to ascertain the voluntariness and intelligence of a plea were explicated in *McCarthy* v. *United States,* 394 U.S. 459 (1969) (construing Fed.R.Crim.P. 11 only), and *Brady* v. *United States,* 397 U.S. 742 (1970).[5] A shortcoming with respect to either requirement will generally result in a finding that justice has not been done, which is the standard for a motion to withdraw a guilty plea pursuant to Mass.R.Crim.P. 30(b). *Commonwealth* v. *Hiskin, supra* at 637. *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. at 580.

"A plea is intelligently made when the defendant has knowledge of the elements of the charges against him." *Commonwealth* v. *Correa,* 43 Mass. App. Ct. 714, 717 (1997). "Furthermore, an intelligent plea requires that the defendant have knowledge of the procedural protections that he would forego [*sic*] by pleading guilty." *Ibid.*[6] Finally, to be voluntary and intelligent, the plea must be tendered with a real understanding of its consequences.

---

[5]As Justice Kaplan observed in *Commonwealth* v. *Foster,* 368 Mass. at 102, *Boykin* "arose from a trial in a State court. It held that, as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must be later set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly." As he also noted, the meaning of *Boykin* is clarified by *McCarthy* v. *United States,* 394 U.S. at 459, handed down two months earlier. In *McCarthy,* the Court said that Federal rule 11, which requires the judge to inquire whether a defendant is aware of the consequences of his plea, "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *Id.* at 464-465. See also note 7, *infra.*

[6]These procedural protections are the so-called intra-trial rights: "The judge must ensure that the defendant is informed, on the record and in open court, of the three constitutional rights which are waived by a plea of guilty: 'the right to trial, the right to confront one's accusers, and the privilege against

"A defendant's plea is intelligent when made with understanding of the nature of the charges (understanding of the law in relation to the facts) and the consequences of his plea (the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial)." *Commonwealth* v. *Hiskin, supra* at 638. See *Commonwealth* v. *Morrow,* 363 Mass. 601, 605 (1973) ("In establishing that a guilty plea is offered intelligently and voluntarily by the defendant, the judge must ensure that the plea has been made with an understanding of the nature of the charge and the consequences of the plea. *Brady* v. *United States,* 397 U.S. [at] 748. *Huot* v. *Commonwealth,* [363 Mass.] 91, 100-101 [1973]"); *Commonwealth* v. *Russin,* 420 Mass. 309, 317-318 (1995) (judge's finding that "the defendant was advised of and understood the elements of the crimes charged and the punishment potentials upon conviction," established that "the constitutional requirements [were] satisfied and . . . the pleas of guilty were freely, willingly and voluntarily made"). See also *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. at 581 & n.11.

i. *Consequences of plea.* The constitutionally based requirement that a defendant must understand the consequences of the plea has been codified, with additional requirements, within Mass.R.Crim.P. 12(c)(3), as amended, 399 Mass. 1215 (1987):

> "(c) *Guilty Plea Procedure.* After being informed that the defendant intends to plead guilty or nolo contendere:
>
> " . . .
>
> "(3) *Notice of Consequences of Plea.* The judge shall inform the defendant on the record, in open court:
>
> "(A) that by a plea of guilty or nolo contendere, or an admission to sufficient facts, the defendant waives the right to trial with or without a jury, the right to confrontation of witnesses, the right to be presumed innocent until proved guilty beyond a reasonable doubt, and the privilege against self-incrimination;

---

self-incrimination.' " *Commonwealth* v. *Correa, supra* at 717, quoting from *Commonwealth* v. *Duquette,* 386 Mass. 834, 841 (1982). See *Boykin* v. *Alabama,* 395 U.S. at 243.

"(B) where appropriate, of the maximum possible sentence on the charge, and where appropriate, the possibility of community parole supervision for life; of any different or additional punishment based upon subsequent offense or sexually dangerous persons provisions of the General Laws, if applicable; where applicable, that the defendant may be required to register as a sex offender; and of the mandatory minimum sentence, if any, on the charge;

"(C) that if the defendant is not a citizen of the United States, the guilty plea, plea of nolo contendere or admission may have the consequence of deportation, exclusion of admission, or denial of naturalization."

That the plea procedures here "are controlled by rule 12(c). . . . does not . . . change the focus of our review: 'The real issue in cases like the present one is whether a waiver was knowingly and voluntarily made.' " *Commonwealth* v. *Johnson,* 11 Mass. App. Ct. 835, 840 (1981), quoting from *Commonwealth* v. *Stanton,* 2 Mass. App. Ct. 614, 620 (1974). See *Commonwealth* v. *Nolan,* 19 Mass. App. Ct. 491, 494-495 (1985) (that plea must be voluntary and knowing "is a doctrine of constitutional law. . . . Our rule 12, . . . especially at subdivision (c), announces a procedure by which the defendant submits, the defendant and the judge [with assistance of the lawyers] consider in the form of a colloquy, and the judge then rules on a guilty plea. The procedure is calculated to give reasonable assurance that a defendant is acting without coercion and with an understanding of what he or she is doing in tendering a plea"); *Commonwealth* v. *Rodriguez, supra* at 581 (as "general proposition of constitutional law," guilty plea must be vacated unless entered knowingly and voluntarily; purpose served by requirements of rule 12 is to ensure that plea of guilty is knowing and voluntary).

Not every aspect of rule 12 is meant to fulfil the constitutionally grounded mandates that a guilty plea be intelligently and voluntarily made. "We will not assume that the defendant's plea was involuntary and unknowing and say as a matter of law that justice was not done simply because the record reflects noncompliance with rule 12." *Commonwealth* v. *Rodriguez, supra* at 580. See *Commonwealth* v. *Clerico,* 35 Mass. App. Ct. 407, 413 (1993), quoting from *Commonwealth* v. *Johnson, supra* ("where the

judge deviates from the technical mandate of rule 12(c), '[t]he real issue . . . is whether a waiver was knowingly and voluntarily made' ").

"Generally, under Massachusetts law, failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary." *Commonwealth* v. *Shindell,* 63 Mass. App. Ct. 503, 505 (2005) (requirement to register as sex offender is collateral).[7] See, e.g., *Commonwealth* v. *Villalobos,* 437 Mass. 797, 804 (2002) (because immigration consequences are "collateral and contingent consequences of a plea," judge's failure to provide advice beyond that specified in statute "does not serve to undermine the knowing and voluntary nature of the defendant's admission to sufficient facts"). See also *Commonwealth* v. *Hason,* 27 Mass. App. Ct. 840, 843 (1989), and cases cited therein.

ii. *Rodriguez.* With respect to understanding the consequences of a plea, *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. at 578-579, provides that, whereas "some consequences of a guilty plea . . . are properly regarded as contingent or collateral," *id.*

[7] In *Brady* v. *United States,* 397 U.S. at 748, the United States Supreme Court reiterated the principle that by pleading guilty a defendant waives constitutional rights and thus the waiver "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Justice White then identified the standard as to voluntariness as "essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit: '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel. . . .' " *Id.* at 755, quoting from *Shelton* v. *United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26 (1958).

Other jurisdictions are not in agreement as to what constitutes a direct consequence. See, e.g., *Moore* v. *United States,* 592 F.2d 753 (4th Cir. 1979) (where violation of special parole can lead to confinement beyond original sentence, Federal rule 11 requirement that defendant be informed of "maximum possible penalty provided by law" requires judge to inform defendant not only of minimum and maximum possible imprisonment for offense, but also of minimum length and absence of statutory maximum of special parole term, and that on violation he can be returned to prison for remainder of his sentence and full length of his special parole term; Failure to do so is "fundamental defect" under *Boykin* v. *Alabama,* 395 U.S. at 238, entitling defendant to relief); compare *Parry* v. *Rosemeyer,* 64 F.3d 110 (3d Cir. 1995) (term of probation is imposed in lieu of rather than addition to normal sentence and does not effectively expand maximum possible sentence for that offense; revocation of probation is collateral consequence more akin to ordinary parole than to special parole).

at 578, "the consequence of a disposition of straight probation is . . . not collateral to the crime to which the plea was given," *id.* at 579. Thus, we held that the defendant, who pleaded guilty to a disposition of straight probation, was entitled to have been informed by the judge "in open court and on the record that the crime to which he was pleading guilty carries a minimum five-year sentence to State prison and a maximum of life, to which he would be sentenced if he did not successfully complete his period of probation, and that if any period of incarceration were imposed it would be for at least a minimum of five years." *Id.* at 578. "[A] defendant cannot appreciate the nature of his probationary disposition without understanding the possible sentence he avoids serving by successfully completing his probation." *Id.* at 579. Compare *Commonwealth* v. *Glines,* 40 Mass. App. Ct. 95, 99 (1996) (where defendant "knew that he would serve five years if he violated probation," plea was made knowingly and voluntarily). A failure to so inform a defendant is not technical.

That the defendant in *Rodriguez* was not, at any point in the plea colloquy, informed of the mandatory minimum and maximum possible sentences for the crimes to which he was pleading guilty does not change the analysis. In the case now before us the judge, at the outset of the hearing, described the sentencing range as being applicable to each indictment "if [the defendant] were to receive a committed prison sentence." However, the defendant received no committed sentences with respect to the guilty pleas at issue. There was thus a risk that, taken as a whole, the colloquy did not adequately convey to the defendant that the minimum-maximum sentences on the charged offenses applied not only if he "were to receive a committed prison sentence," but remained applicable if he received straight probation.[8] The defendant was not told that "if he did not successfully complete his period of probation, and that if any period of incarcera-

---

[8]The judge addressed the defendant at the outset of the hearing: "Do you understand that you are charged in six indictments with armed assault in a dwelling, which carries a maximum sentence of life imprisonment, and a twenty-year minimum sentence if you were to receive a committed prison sentence —" Corrected by defense counsel, the judge continued: "Okay. Let me correct that for you, Mr. Murphy. There is one indictment for home invasion which carries life imprisonment in the state penitentiary, or a minimum mandatory. . . . If you were to receive a prison sentence, it would have to be a minimum of a twenty-year prison sentence on the home invasion." As to the

tion were imposed it would be for at least a minimum of [twenty] years." *Commonwealth* v. *Rodriguez, supra* at 578.[9]

That the omission was not technical does not end our inquiry. Even where, as here, the judge's colloquy risked not adequately informing the defendant that failing to successfully complete his period of probation could result in the imposition of a period of

indictments for armed assault, the judge similarly noted that as to these indict-ments "a maximum sentence of life, with a sentence, if you were to be com-mitted to prison, a ten-year minimum commitment, with parole eligibility after five years only."

The judge then stated that it had been explained to him that the defendant wished to plead guilty to the indictments, and asked if that was correct. The defendant said "Yes." The judge then asked: "Are you aware that the As-sistant District Attorney indicated that, if you pled guilty, she was going to recommend a committed prison sentence of six-to-eight years in state's prison, as I understood it, with some probation time following that [as well as] restitution and no-contact order. I indicated to your attorney that I would sentence you, if you pled guilty, in all likelihood, to three years to three years and a day to state's prison, with probation from and after that. After that you would be on probation for three years with a no-contact order. We didn't discuss the terms of restitution, but that would be, certainly, something that I would look to and hold a hearing on." Following a break, the judge asked the defendant whether he "had a chance to discuss, with your attorney, the terms of restitution?" The defendant said "Yes." The judge then asked several ques-tions as to the defendant's understanding about the amount of restitution and challenges thereto. The judge then asked: "Do you understand the sentence that I'm inclined to impose upon you, today?" and the defendant answered "Yes."

We are mindful of the fact that the able judge did not have the benefit of the *Rodriguez* decision at the 1998 plea hearing.

[9]During the colloquy that followed the defendant's confirmation that he wished to plead guilty, the judge explained the intra-trial rights he would be giving up and advised the defendant of the potential immigration consequences of his plea; asked whether the defendant's attorney had explained the charges and the evidence against him; and obtained the defendant's agreement that he was pleading guilty of his own free will.

At no point did the judge inform the defendant that violation of the terms of his probation would subject him to being sentenced to the maximum pos-sible sentences for each of the crimes for which he was placed on probation. When discussing the probationary terms, the judge informed the defendant only that he "would be on probation for three years with a no-contact order" and required to pay restitution. Indeed, the judge's comment to the defendant that, if he pleaded guilty, the assistant district attorney would recommend "a committed prison sentence of six-to-eight years in state's prison, as I understood it, with some probation time following that," undercuts the seriousness of the potential, lengthy mandatory minimum and maximum sentences that the defendant in fact faced.

incarceration for at least a minimum of twenty years, see *Commonwealth* v. *Rodriguez, supra*, automatic reversal of a motion for new trial was not required.[10]

c. *Withdrawal of guilty plea.* Where the motion for a new trial is based on a challenge to the adequacy of the colloquy relating to consequences, "[t]he defendant has the burden of showing any special circumstances relating to his plea that demonstrate that denial of his motion to withdraw his plea would work an injustice." *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. at 581. The defendant must "come[] forward with a credible reason for withdrawing the plea that outweighs the risk of prejudice to the Commonwealth," and provide "plausible evidence that, if fully informed, he would have preferred to go to trial and face [minimum mandatory sentences of twenty years and a maximum sentence of life] if found guilty." *Ibid.* Factors to consider in deciding whether the defendant's reason for withdrawing his pleas is credible include whether the defendant asserted his legal innocence; referenced weaknesses in the Commonwealth's case or a possible defense; and whether the parties had reached a plea agreement. *Id.* at 581-582. Also relevant are the timing of a request to vacate the plea, *id.* at 580 n.10, and whether "[t]he defendant was represented by, and had the advice of, able counsel throughout. 'Representation and consultation with counsel are significant factors in determining whether a guilty plea . . . not accompanied by a [sufficient plea colloquy] was, nonetheless, knowingly and voluntarily made.' " *Id.* at 583, quoting from *Commonwealth* v. *Russell,* 37 Mass. App. Ct. 152, 157 (1994).

In deciding the first motion for a new trial, the judge incorrectly concluded that he was not required to inform the defendant of the minimum and maximum sentences applicable if the defendant failed successfully to complete his probation.[11] Nevertheless, the judge's detailed memorandum reflects his consider-

---

[10]To avoid a recurrence of this situation, we think that the best practice is for a judge's plea colloquy specifically to advise a defendant receiving a sentence of straight probation that, if he does not successfully complete his period of probation and any period of incarceration were to be imposed, he would face the minimum and maximum sentences applicable to the charges to which he is pleading guilty. The applicable minimum and maximum sentences ought then to be described.

[11]We do not think that *Commonwealth* v. *Bruzzese,* 437 Mass. 606, 618

ation of many of the factors set out in *Commonwealth* v. *Rodriguez, supra* at 581-583. The judge had before him the defendant's criminal record which reflected his prior experience with the criminal justice system at the time. From this, the judge determined that "[t]he defendant was . . . familiar enough with the criminal justice system that [it was] unlikely that he did not understand the consequences [of] receiving a sentence of probation in exchange for his plea agreement."[12] See *Commonwealth* v. *Bolduc*, 375 Mass. 530, 537-538 (1978).

The judge also noted that the defendant took the opportunity to "speak with his attorney during the plea colloquy when he requested to be allowed to do so," and that "the defendant's trial attorney demonstrated his own understanding of the minimum and maximum sentences for [the] crimes," and he described defendant's trial counsel as "among the most experienced and respected defense attorneys in Massachusetts." The judge observed that "[n]oticeably absent from the defendant's motion is

---

(2002), upon which the motion judge relied, mandates a contrary conclusion. *Commonwealth* v. *Rodriguez, supra,* is cited in *Bruzzese* with no apparent disapproval (see *Commonwealth* v. *Bruzzese, supra* at 617-618); nor does *Bruzzese* depart from the basic principle of *Rodriguez* that the failure to inform a defendant of the consequences of pleading guilty is error. That case involved a claim by a defendant, who had received concurrent terms of straight probation, that imposition of consecutive sentences after a revocation of probation was illegal. *Commonwealth* v. *Bruzzese, supra* at 617. There was no claim that the defendant was not informed of the maximum sentences to which he could be sentenced, but only that these sentences could not be imposed consecutively. The court in *Bruzzese* cites *Commonwealth* v. *Rodriguez, supra* at 580-583 (wherein the *Rodriguez* court sets out the factors to be considered in the denial of a motion to withdraw a guilty plea and for new trial), for the unremarkable proposition that the failure to advise the defendant in that case that violation of the conditions of straight probation could result in the imposition of the minimum mandatory sentence was not "sufficient" to justify the withdrawal of his plea. By use of the word "sufficient" and by citation to those pages where case specific factors were discussed, the court was reiterating that, in addition to the failure to inform, something more must be shown. We infer that the *Bruzzese* court simply decided in that case, as we did in *Rodriguez*, that the defendant did not make the necessary credible, additional showing.

[12]Our review of the record indicates that the defendant had, prior to his 1998 plea, received a continuance without a finding, in essence a one-year term of probation, on a charge to which he pleaded guilty. Mere weeks before the year was up, he violated probation and a sentence of one year was imposed (four months to serve with the balance suspended).

an affidavit from" his attorney.[13] See *Commonwealth* v. *Thurston*, 53 Mass. App. Ct. 548, 553-554 (2002).

The defendant's affidavit in support of his first motion for a new trial does not assert a claim of legal innocence and we note in this connection that, at the plea hearing, the defendant agreed that he was present during the home invasion.

The judge did not have before him necessary information supporting a credible basis for allowing the withdrawal of the pleas, and the information he was provided would not have supported the defendant's claim that his pleas were not intelligently made.

Based on the foregoing, it has not been made to appear that motion counsel's failure to appeal the denial of the first motion likely deprived the defendant of an otherwise available, substantial ground of defense.

3. *Conclusion.* The order denying the defendant's motion to withdraw his guilty pleas and for a new trial is affirmed.

*So ordered.*

GRAHAM, J. (concurring). I agree that *Commonwealth* v. *Rodriguez*, 52 Mass. App. Ct. 572 (2001), requires that, before a defendant pleads guilty and is placed on straight probation, a judge must inform the defendant, on the record and in open court, of the minimum mandatory and maximum sentences he faces upon a violation of the terms of probation. Here, the judge did advise the defendant of the minimum mandatory and maximum sentence for the offenses charged, and did so in great detail. The narrow issue is whether, in the circumstances of this case, the judge's colloquy was inadequate because the judge did not explicitly inform the defendant that he would be subject to those minimum mandatory sentences if he violated the terms of probation. On my

---

[13]The judge also concluded that the defendant's motion for a new trial was dilatory because it was not made until 2003, five years after he tendered his pleas of guilty and was sentenced. We note, however, that the motion was filed soon after the defendant was found in violation of his probation and sentenced. This could equally support the claim that the defendant did not know of the sentence he faced until it was imposed in 2003.

reading, I conclude that the extensive and detailed colloquy did convey to the defendant that, if he violated the terms of probation, he faced the minimum mandatory and maximum sentences for the charged offenses.