NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1111                                          Appeals Court

COMMONWEALTH  vs.  ANTONIO WILLIAMS.

No. 14-P-1111.

Plymouth.      November 17, 2015. - May 12, 2016.

Present:  Cypher, Trainor, & Rubin, JJ.

Practice, Criminal, Plea, Sentence.

Indictments found and returned in the Superior Court
Department on July 26, 2010, and April 22, 2011.

Motions to withdraw guilty pleas, filed on June 3, 2013,
and January 30, 2014, were heard by Paul A. Chernoff, J.,
Special Judicial Magistrate, and an order affirming the proposed
order of the Special Judicial Magistrate was entered by Frank M.
Gaziano, J.

Jason Howard for the defendant.
Laurie Yeshulas, Assistant District Attorney, for the
Commonwealth.

CYPHER, J.  The defendant, Antonio Williams, appeals from

the denial of his motions to withdraw his guilty pleas pursuant

to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001).

The offenses were set forth in two sets of indictments that

charged unrelated gun and drug crimes. The defendant argues that because the guilty pleas were based, in part, on drug tests performed by Annie Dookhan at the Hinton State Laboratory Institute (Hinton laboratory), the subsequent discovery of Dookhan's pervasive wrongdoing requires the reversal of the convictions.[1]

The first set of indictments (the gun case) arose after the police responded to a report of domestic violence at the home of the defendant's girl friend on April 14, 2010. Upon their arrival, the police were informed by the girl friend that the defendant had threatened her. While there, police also saw loose ammunition and a loaded firearm, both of which the defendant admitted were his. The defendant was charged with unlawful possession of a firearm (G. L. c. 269, § 10[a]); unlawful possession of a loaded firearm (G. L. c. 269, § 10[n]); unlawful possession of ammunition without an FID card (G. L. c. 269, § 10[h]); and threat to commit a crime (G. L. c. 275, § 2). The first indictment, charging unlawful possession of a firearm, also alleged that the defendant previously had been convicted of three predicate offenses, namely, armed masked robbery as a juvenile, possession with intent to distribute

---

[1] For a detailed description of the investigation of the Hinton laboratory, the indictment of Annie Dookhan, and Dookhan's guilty pleas, see Commonwealth v. Scott, 467 Mass. 336, 337-342 (2014).

marijuana and "crack" cocaine on June 21, 2006 (No. 0615CR4295) (the 2006 drug charges), and possession with intent to distribute a class B substance on July 29, 2007 (No. 0715CR005623) (the 2007 drug charges),[2] thus subjecting him to enhanced sentencing as an armed career criminal under G. L. c. 269, § 10G(c) (the ACC offense).

On March 4, 2011, while the defendant was out on bail on the gun charges, the police executed a search warrant in the third-floor apartment in Brockton where he was living with his mother, her boy friend, and his younger brothers. During the search, police found what they believed to be cocaine residue in an area in the defendant's bedroom that suggested drugs were being prepared for packaging and sale. They also found fifteen bags of suspected marijuana and nineteen bags of suspected crack cocaine, as well as a scale, gloves, bags, scissors, and numerous plastic bags in the bedroom. On a tray in the kitchen, police found nine twisted bags of what are alleged to be Oxycontin pills as well as suspected crack cocaine. According to the police report, the defendant said that if the weight of the purported crack cocaine in combination with the substance found in his bedroom "was less than trafficking weight then he

---

[2] The defendant pleaded guilty to both the 2006 and 2007 drug charges on September 25, 2007, in the Brockton Division of the District Court Department.

would admit the crack cocaine and the pills in the kitchen were his."  The house was within 1,000 feet of a public school.

As a result of the search, a second set of indictments was returned (the drug case) charging the defendant with possession of cocaine with intent to distribute, second or subsequent offense, G. L. c. 94C, § 32A(c) and (d); possession of oxycodone with intent to distribute, second or subsequent offense, G. L. c. 94C, § 32A(c) and (d); and possession of marijuana with intent to distribute, second or subsequent offense, G. L. c. 94C, § 32C.  Each indictment included a count charging that the defendant had committed that particular offense in a school zone, G. L. c. 94C, § 32J.  The second or subsequent offense portion of each indictment identified the defendant's convictions on the 2006 drug charges as the prior offense.

A plea hearing was held on January 26, 2012.  At the outset of the hearing, the prosecutor explained that she was willing to reduce the ACC offense from a "level III" (three predicate offenses) to a "level II" (two predicate offenses), thereby reducing the defendant's exposure from a minimum mandatory sentence of fifteen years and a maximum sentence of twenty years to a minimum mandatory sentence of ten years and a maximum sentence of fifteen years.  See G. L. c. 269, § 10G(b) and (c).  She further indicated that she would seek a ten- to twelve-year aggregate sentence on the level II ACC offense and the related

charges and an additional aggregate sentence of no more than ten years on the drug counts. The prosecutor sought consecutive sentences because the defendant had committed the drug offenses while he was out on bail on the gun charges. See G. L. c. 279, § 8B.[3] For his part, the defendant requested concurrent sentences and a reduction in the prosecutor's offer of ten to twelve years on the level II ACC offense to ten years.

Upon inquiry from the judge, the prosecutor confirmed that, in the event the judge intended to impose concurrent rather than consecutive sentences, she would nonetheless maintain her offer to reduce the ACC charge to a level II offense and would not increase the ten- to twelve-year sentence recommendation. Against this backdrop, the defendant pleaded guilty to the charges with the ACC charge reduced to a level II offense.

The prosecutor recited the facts of both cases including that testing had confirmed the nature of the substances underlying the drug case. Certificates of analysis showed that

---

[3] General Laws c. 279, § 8B, as appearing in St. 1994, c. 68, § 8, provides, in pertinent part:

> "If a defendant on release [on bail or personal recognizance] commits a crime, the sentence imposed for [that] crime shall run consecutively to the earlier sentence for the crime for which he was on release."

The requirement of consecutive sentences can be avoided however, if a defendant is first sentenced for the crime committed while out on bail and then sentenced for the charge on which he made bail. Commonwealth v. Hickey, 429 Mass. 1027 (1999).

the contraband had been analyzed at the Hinton laboratory by Annie Dookhan, who had signed the certificates of analysis as either the primary analyst or the sole analyst. At the conclusion of the plea hearing, the judge accepted the pleas and sentenced the defendant to an aggregate sentence of not less than ten nor more than twelve years in State prison on the gun charges and a concurrent aggregate term of seven and one-half years in State prison on the drug offenses.

Between June, 2013, and January, 2014, in light of problems that surfaced at the Hinton laboratory and with Annie Dookhan, in particular, the defendant filed a motion in both the gun case and the drug case to withdraw his guilty pleas and for a new trial. See generally Commonwealth v. Torres, 470 Mass. 1020, 1021 (2015). Simultaneously, in the Brockton Division of the District Court Department, the defendant challenged his convictions on the 2006 and 2007 drug charges that constituted the enhancement offenses on grounds that Annie Dookhan analyzed the drugs underlying the 2006 charges and another chemist in the same laboratory analyzed the drugs at issue in the 2007 charges.

After a hearing, a special magistrate appointed to preside over criminal proceedings in connection with cases relating to the Hinton laboratory issued proposed rulings and orders denying the defendant's motions to withdraw his guilty pleas in the case

at bar.[4]  See Commonwealth v. Charles, 466 Mass. 63, 75-76
(2013).  The defendant appealed, and a judge of the Superior
Court affirmed the orders of the magistrate denying the
defendant's motions.

The magistrate found that while the gun case against the
defendant was strong, the drug case was not.  He reasoned that
"if [the defendant] had been facing solely the [drug] case,"
"[t]he defendant may reasonably have chosen to go to trial if he
had known he had a chance of successfully suppressing the drug
tests" and that "he could have used information of Dookhan's
misconduct to impeach her testimony and undermine the veracity
of the tests that she performed as a primary chemist."  The
magistrate concluded, however, that "it would not have been
rational for the defendant to forgo the plea bargain to proceed
to trial and risk a mandatory from and after sentence" on the
drug case.  The magistrate acknowledged that "[i]f one or both
of [the enhancement] charges is ultimately resolved in his
favor, then the defendant has grounds to seek further redress in
this court."

The defendant argues on appeal that because Dookhan's
misconduct would have resulted in the likely reversal of the
drug charges, the specter of an on-and-after drug sentence did

---

[4] The only evidence introduced at the hearing was the police
report (included in the record on appeal) related to the
execution of the search warrant in the present drug case.

not actually hang over him.  After the initial appellate briefs were submitted in this case, the defendant filed a reply brief stating that the order denying his motion to withdraw his guilty plea on the 2007 enhancement offenses had been affirmed by this court, and that further appellate review had been denied by the Supreme Judicial Court.  See Commonwealth v. Williams, 87 Mass. App. Ct. 1106 (2015).  After oral argument, defense counsel further informed us in a letter pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), that upon remand from this court, see Commonwealth v. Williams, 86 Mass. App. Ct. 1114 (2014), his motion to withdraw his guilty plea on the 2006 drug charges, which had served both as a basis for the armed career criminal enhancement on the firearm possession charge and the second and subsequent offense drug charges in the present matter, had been allowed in the trial court.  Anticipating this result, the defendant argued in his brief and at oral argument that reversal of one of the three original predicate offenses underlying the ACC count would render the subsequent plea to the reduced charge no "bargain."  According to the defendant, the plea would have garnered him nothing, demonstrating that there is a reasonable probability that he would have refused to plead guilty and instead would have insisted on going to trial.

Discussion.  "A motion for a new trial pursuant to Mass. R. Crim. P. 30(b) is the proper vehicle by which to seek to vacate

a guilty plea. . . . Under Mass. R. Crim. P. 30(b), a judge may grant a motion for a new trial any time it appears that justice may not have been done. A motion for a new trial is thus committed to the sound discretion of the judge. . . . Rule 30(b) encourages judges to make such findings of fact as are necessary to resolve the defendant's allegations of error of law. The judge is the final arbiter on matters of credibility, and the judge's findings of fact are to be accepted if supported by the evidence. . . . We review an order [denying] a new trial motion to determine if the judge committed a significant error of law or other abuse of discretion." Commonwealth v. Scott, 467 Mass. 336, 344 (2014) (citations and quotations omitted). Here, because a Superior Court judge affirmed the order of the special magistrate, we treat the magistrate's findings and rulings as those of the judge and apply the same standard of review. See Commonwealth v. Charles, 466 Mass. at 75-76, 84, 87 (magistrates conferred with power to conduct hearings on postconviction matters and to make proposed findings and rulings but ultimate decision whether to allow or deny motion must be made by judge).

"In establishing that a guilty plea is offered intelligently and voluntarily by the defendant, the judge must ensure that the plea has been made with an understanding of the nature of the charge and the consequences of the plea. Brady v.

United States, 397 U.S. 742, 748 [1970]. Huot v. Commonwealth, [363 Mass.] 91, 100-101 [1973]." Commonwealth v. Russin, 420 Mass. 309, 317-318 (1995), quoting from Commonwealth v. Morrow, 363 Mass. 601, 605 (1973). Where, as here, the plea is challenged on grounds of Dookhan's misconduct, the test to assess whether these requirements have been met begins with a conclusive presumption that the misconduct was egregious and that its occurrence was attributable to the Commonwealth (prong one), Commonwealth v. Scott, 467 Mass. at 352, and then requires a defendant to show that "the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice" (prong two), id. at 346, quoting from Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006). See Commonwealth v. Scott, supra at 346 n.5, 354-355. Materiality turns on proof of "a reasonable probability that [the defendant] would not have pleaded guilty had he known of Dookhan's misconduct" and that he would have insisted on going to trial. Id. at 355. This analysis requires that we consider the "totality of the circumstances" and the "full context of the defendant's decision to enter a plea agreement." Id. at 355, 357.[5] See Ferrara v. United States, 456 F.3d at 294 ("Because a

---

[5] In Scott, the court enumerated factors that may be relevant to a showing under the second prong, but made clear that additional factors not identified in the following list may also be considered in a particular case; (1) whether evidence

multiplicity of factors may influence a defendant's decision to enter a guilty plea, a court attempting to answer this question must use a wide-angled lens").  In addition, "[t]he reasonable probability analysis must be based on the actual facts and circumstances surrounding the defendant's decision at the time of the guilty plea in light of the one hypothetical question of what the defendant reasonably may have done if he had known of Dookhan's misconduct."  Commonwealth v. Scott, 467 Mass. at 357.

Here, the ACC charge with three predicate offenses was the pivotal indictment against the defendant.  Plea negotiations proceeded on the basis that this indictment carried a minimum mandatory sentence of fifteen years and a maximum sentence of twenty years.  During negotiations, the Commonwealth indicated a willingness to reduce this charge to include only two predicate offenses, thereby reducing the defendant's exposure to a minimum mandatory sentence of ten years and a maximum sentence of

of the misconduct could have detracted from the factual basis for the plea; (2) whether the evidence could have been used to impeach an outcome-determinative witness; (3) whether the evidence was cumulative; (4) whether the evidence would have influenced counsel's advice as to whether to accept a plea offer; (5) whether the value of the evidence was outweighed by the benefits of the plea offer; (6) whether the defendant had a substantial ground of defense that could have been pursued at trial; (7) whether there were any special circumstances on which the defendant may have placed particular emphasis in deciding whether to accept a plea offer; and (8) whether the defendant was facing additional charges and whether the drug charges were a minor component of an over-all plea agreement.  467 Mass. at 355-357, citing Ferrara v. United States, 456 F.3d at 294, and Commonwealth v. Clarke, 460 Mass. 30, 46-48 (2011).

fifteen years. An agreement was reached, which resulted in the defendant's plea to the reduced charge in exchange for a sentence of ten to twelve years of incarceration on the gun charges. That the punishment imposed on the remaining drug charges was subordinated to this sentence only further evidences that the ACC indictment was the driving force behind the plea.

In this posture, the subsequent allowance of the defendant's motion to withdraw his guilty plea on the 2006 drug charges -- one of the two predicate offenses underlying the ACC conviction -- on grounds of egregious governmental misconduct by Dookhan may have been material to the defendant's decision to plead guilty in the present matter.[6] To the extent the defendant's plea resulted from a desire to avoid the risk of a twenty-year prison term, a sentence that would not have been

_____

[6] We note that a distinctly different situation is presented when a defendant's conviction is obtained as the result of a trial and a sentence is imposed under an enhancement count that includes a predicate offense that is later successfully challenged. In such cases, because the defendant has not relinquished any rights to go to trial, there can be no impact upon the validity of the conviction from an incorrectly included predicate offense that is related solely to the sentencing phase of the proceedings. In such instances, courts have simply vacated so much of the enhancement count as includes the offending predicate offense and remanded the case for resentencing. See Commonwealth v. Eberhart, 461 Mass. 809, 820 (2012); Commonwealth v. Colon, 81 Mass. App. Ct. 8, 26 (2011). See also Commonwealth v. Leggett, 82 Mass. App. Ct. 730, 735 (2012) (because judge's sentencing scheme for multiple counts is "typically an integrated plan," subtraction of one or more offenses may disrupt entire scheme and require case to be remanded to trial judge for reconsideration of entire sentencing structure).

permitted after the predicate offense was vacated, the defendant's decision to plead guilty was not a correctly informed one.  See, e.g., Commonwealth v. Lenhoff, 796 A.2d 338, 342-343 (Pa. Super. 2002) (where plea negotiations were flawed from outset by incorrect sentencing parameters, defendant was entitled to withdraw plea).  Cf. Commonwealth v. Roberts, 472 Mass. 355, 364 (2015) ("The failure to provide information . . . to a defendant with respect to a matter as significant as the possibility of a [G. L.] c. 123A commitment may provide a basis for withdrawing the plea, so long as the defendant shows that he or she was prejudiced by the omission").  A mistake regarding the direct consequences of pleading guilty, including the maximum possible sentence of the crime charged, undermines the validity of a guilty plea.  See Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 576-580 (2001); Commonwealth v. Shindell, 63 Mass. App. Ct. 503, 506-507 (2005); Commonwealth v. Murphy, 73 Mass. App. Ct. 57, 59 (2008); Mass.R.Crim.P. 12(c)(3)(B), as appearing in 442 Mass. 1511 (2004).  These concerns are only exacerbated by the fact that the drug charges that were included in the plea in the present matter are also directly implicated by Dookhan's misconduct.

The defendant's appeal, however, is premature.  As the magistrate made clear, if a conviction underlying the ACC count were invalidated, it would provide grounds to seek further

redress in the trial court.  The defendant has not done so but has instead come directly to this court.  Whether the defendant would have insisted on going to trial in these circumstances is a fact-intensive determination that must in the first instance be evaluated in the trial court.  This determination has never had an evidentiary airing, nor has the Commonwealth had an opportunity to consider the new information regarding the predicate drug offense from 2006 and what, if any, other offer it would have made.  See Commonwealth v. Scott, 467 Mass. at 355-357.  Cf. Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 401-402 (2012) (hearing necessary to determine whether counsel adequately advised defendant of deportation risk); Commonwealth v. Henry, 88 Mass. App. Ct. 446, 456-457 (2015) (factual development necessary to resolve question concerning guilty plea where defendant risked deportation).

We vacate the orders of the Superior Court affirming the denial of the defendant's motions to withdraw his guilty pleas and remand the case for further proceedings and findings in accordance with this opinion and the reasoning in Commonwealth v. Scott, 467 Mass. 336 (2014).

So ordered.