In 2011, pursuant to a package plea agreement resolving two separate cases, the defendant pleaded guilty to five firearm-related charges and to one charge of possession of a controlled substance with intent to distribute (the drug charge). Four years later, he moved to withdraw all six guilty pleas based on the misconduct of State chemist Annie Dookhan. Although Dookhan played no role in the Commonwealth's investigation or prosecution of the firearm charges, the defendant maintained that had he known of her misconduct at the time his package plea agreement was negotiated, he never would have accepted that agreement. Following an evidentiary hearing, a Superior Court judge allowed the defendant's motion as to the drug charge but denied it as to the five firearm charges. On the defendant's appeal, we affirm.
Background.[2] The underlying incidents. The charges at issue stem from two separate incidents. In the first, which occurred on April 28, 2009, Boston police officers stopped a rental car driven by the defendant in which two other individuals were passengers. In the course of searching the vehicle, the police found a loaded firearm, a loaded magazine, and a plastic bag of suspected crack cocaine in the area between the front seats. The bag was submitted to the William A. Hinton State Laboratory Institute for chemical testing and was found to contain cocaine. The certificate of analysis listed Annie Dookhan as the confirmatory chemist. Based on the items found between the front seats, the defendant was indicted for possession of a class B substance with intent to distribute, unlawful possession of a firearm, unlawful possession of ammunition, unlawfully carrying a loaded firearm, and possession of a large capacity feeding device (collectively, the 2009 charges).
The second incident, which occurred on May 1, 2010, involved another stop of a different rental vehicle operated by the defendant. Based on the discovery of a loaded firearm found in a makeshift "hide" in the vehicle, the defendant was indicted for unlawful possession of a firearm and ammunition, and carrying a loaded firearm (collectively, the 2010 charges).
The plea agreement. The Commonwealth and the defendant eventually reached a package plea agreement to resolve both cases. The defendant pleaded guilty to the 2009 charges on March 31, 2011, and to the 2010 charges on June 3, 2011, except that in both cases, the Commonwealth agreed to dismiss the unlawful possession of ammunition charges. Sentencing on the first case was stayed until resolution of the second case, so that an agreed-upon global disposition could be imposed. In the 2009 case, the defendant received concurrent sentences of two and a half years to two and a half years and one day in State prison on the drug charge and two of the firearm charges. On the third firearm charge, the defendant received a consecutive sentence of eighteen months' probation. In the 2010 case, the defendant received two and a half years to two and a half years and one day imprisonment for possession of a firearm (to run concurrently with the imprisonment for the 2009 charges) and eighteen months of probation for carrying a loaded firearm, to run concurrently with the probation imposed on the 2009 charge.
The motion to withdraw. In 2015, after Dookhan's misconduct had come to light, the defendant moved to withdraw his guilty plea with regard to the drug charge on the ground that had he been aware of this misconduct in 2011, he would have insisted on going to trial on that charge. The defendant also moved to withdraw his guilty pleas on the five firearm charges, on the ground that he pleaded guilty to these offenses only as part of a package deal.
After hearing testimony from the defendant and accepting an affidavit from the defendant's plea counsel,[3] the judge examined the considerations enumerated in Commonwealth v. Scott, 467 Mass. 336, 355-356 (2014). He observed that the Dookhan revelations had no bearing on the strength of the Commonwealth's case with respect to the multiple firearm charges of 2009 and 2010, for which the defendant faced very significant minimum mandatory sentences if found guilty at trial.[4] As the judge concluded:
"Insofar as the firearm charges are concerned ... the defendant has not shown how misconduct in drug testing would have affected his assessment of the strength of the Commonwealth's case or its position with regard to a global plea. The sentencing agreement, when measured against the potential (and mandatory) penalties that could have flowed from conviction after trial, was generous and favorable to the defendant separate and apart from any infirmity in the evidence related to the drug charge."
At the same time, the judge accepted plea counsel's averment that-had he known of the Dookhan misconduct in 2011-he "would have sought a more favorable global plea bargain." Other than claiming that "[t]he whole structure" of the offer might have changed or "may be a lighter sentence," the defendant provided no specific testimony or other evidence as to what additional concessions he might have won had he been armed with knowledge of the Dookhan misconduct. Nevertheless, the judge concluded that the defendant "likely" would have obtained some negotiated benefit from the Commonwealth with regard to the drug charge. The judge specifically described the more favorable results the defendant might have obtained on the drug charge as follows: "[P]erhaps achieving a lesser penalty, a lesser charge (simple possession perhaps), or, at most, a dismissal of the drug charge." After making such observations, the judge allowed the defendant's motion to withdraw the guilty plea as to the drug charge, but denied it with respect to the firearm charges. On appeal, the defendant again presses his argument that Dookhan's misconduct "tainted the entire global plea."[5]
Subsequent development. Meanwhile, the Commonwealth agreed to dismiss the drug charge with prejudice as part of the review mandated by Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 327 (2017). A single justice of the Supreme Judicial Court entered an order effecting that dismissal. See Bridgeman vs. District Attorney for the Suffolk Dist., No. SJ-2014-0005 (April 19, 2017) (declaratory judgment). Accordingly, the Superior Court docket in the current case now reflects that the drug charge has been dismissed with prejudice.
Discussion. Because Dookhan served as the confirmatory analyst on the drug case during the relevant time period, the defendant is entitled to a conclusive presumption of egregious government misconduct. Scott, 467 Mass. at 338. However, to succeed on his motion to withdraw, the defendant still needed to demonstrate prejudice, that is, "a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct." Id. at 355. Where, as here, the relevant drug charge was part of a larger negotiated plea arrangement that included charges unaffected by the misconduct, reviewing courts examining whether a defendant would have accepted the plea agreement anyway may consider how central the drug charge was to the overall agreement. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 357 (recognizing that in such a case, courts may consider "whether the drug-related charges were a minor component of an over-all plea agreement").[6]
Here, the judge did not consider the drug charge central to the package plea agreement. To the contrary, his ruling makes plain that he viewed that agreement as having been driven by the multiple firearm charges. With the drug charge serving the role as-in the Commonwealth's characterization-"the tail wagging the dog," the judge rejected the defendant's claim that he would have taken the firearm charges to trial had he known of the Dookhan misconduct. In addition, the judge rejected the defendant's suggestion that the defendant could have won negotiated concessions from the Commonwealth with respect to the firearm charges.[7] Nevertheless, the judge ruled that the defendant had met his burden of proving that had he been aware of the Dookhan misconduct, he would not have accepted the package plea deal as it related to the drug charge. Moreover, the judge concluded that as part of the package plea agreement, the defendant likely would have negotiated at least a somewhat better deal with respect to the drug charge. It was on this basis that the judge allowed the defendant to withdraw from the plea agreement with respect to that charge.
The effect of the judge's ruling was to bind the defendant to the same overall sentencing disposition as before, while theoretically leaving the drug charge hanging over his head, a result that, one might surmise, would not have been entirely satisfactory to the defendant. In the end, we need not consider this potential anomaly, because, as noted, the drug charge subsequently was dismissed with prejudice. As a result, the defendant ended up with the "best case" result that the judge concluded he might have obtained in a package plea agreement had he been aware of Dookhan's misconduct. The defendant is unable to demonstrate on this record that had the misconduct come to light before the plea agreement was executed, there was a reasonable probability that he would have rejected an agreement that included the agreed-upon sanctions for the firearm charges and a dismissal with prejudice of the drug charge (the only charge that the misconduct substantively could have affected). Under these circumstances, we see no reason to disturb the judge's order. Contrast Commonwealth v. Williams, 89 Mass. App. Ct. 383, 389 (2016) ("[T]he subsequent allowance of the defendant's motion to withdraw his guilty plea on the 2006 drug charges-one of the two predicate offenses underlying the [armed career criminal] conviction-on grounds of egregious governmental misconduct by Dookhan may have been material to the defendant's decision to plead guilty in the present matter"). We note that this result is consistent with the Supreme Judicial Court's recent statement, made in the context of its ordering additional District Attorney review of Dookhan cases, that "[w]here a defendant pleaded guilty to multiple charges at a plea hearing or was convicted at trial of multiple counts, the vacatur of these drug convictions with prejudice will not affect any nondrug convictions." Bridgeman, 476 Mass. at 328 n.26.
Order on defendant's motion to withdraw guilty pleas affirmed.

"We summarize the [motion] judge's findings ..., supplementing those findings with certain details from the record where they are consistent with the judge's findings and determinations of credibility." Commonwealth v. DeJesus, 468 Mass. 174, 175 (2014). The judge drew the facts regarding the underlying offenses from the recitations at the plea hearings and the defendant's testimony at the motion hearing.

The parties agreed the judge could accept plea counsel's affidavit in lieu of his testifying.

Had the defendant been convicted at trial of the two unlawful possession of firearm charges, he would have faced minimum mandatory sentences for those convictions alone of five years in prison (a two and a half year sentence for each conviction, with the sentences required to be served consecutively). Had he been convicted of the large capacity feeding device charge, he would have faced an additional two and a half year minimum mandatory sentence, which could have been imposed as a consecutive sentence. Finally, had he been convicted of the loaded firearm charges, he faced an additional sentence of up to two and a half years in prison, which would have to be served consecutively to the sentences on the underlying unlawful possession of a firearm charges. In contrast, the defendant faced only a minimum mandatory sentence of one year on the drug charge.

At oral argument, the defendant represented, without contradiction by the Commonwealth, that he has served his full sentence.

See also Commonwealth v. Resende, 475 Mass. 1 (2016) (upholding special magistrate's determination "that the defendant had failed to satisfy his burden of demonstrating a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct," id. at 19, where only one of several charges was affected by that misconduct, Commonwealth's case otherwise was strong, and the over-all plea bargain was highly favorable to the defendant, id. at 16-19 ).

The defendant's proof that he could have negotiated a better plea bargain with respect to the firearm charges is comparable to that in Commonwealth v. Chleikh, 82 Mass. App. Ct. 718, 727 (2012), which arose in the analogous context of a defendant seeking to withdraw from a plea agreement based on ineffective assistance with regard to the immigration consequences of the agreement. The defendant there averred that "[h]ad I understood the consequences of my pleas, I would have tried to negotiate for suspended sentences of less than one year." Id. at 720. In the face of that claim, we concluded that "there [was] no evidence that there was a reasonable probability that the defendant would have succeeded in negotiating a plea to different charges or a sentence with different deportation consequences." Id. at 727.